ILLINOIS OFFICIAL REPORTS

*People v. Coleman*, 2011 IL App (1st) 091005

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JONATHAN COLEMAN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-1005 |
| Filed | July 22, 2011 |
| Rehearing denied | August 18, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's postconviction petition alleging that his trial counsel was ineffective in advising him not to testify and that his appellate counsel failed to raise issues defendant was now asserting was properly dismissed summarily where the trial counsel's advice was a reasonable trial strategy and appellate counsel acted within the range of reasonable professional assistance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-2148(01); the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, Patricia Unsinn, and Bryon M. Reina, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Douglas Harvath, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justices McBride and R. Gordon concurred in the judgment and opinion.

## OPINION

¶ 1    The circuit court summarily dismissed the defendant's postconviction petition in which he asserted, among other claims, ineffective assistance of trial counsel based on his allegation that counsel deprived him of his right to testify and that appellate counsel rendered ineffective assistance when he failed to raise "wholly meritorious" issues on direct appeal. Alternatively, he contends that even if his petition was subject to summary dismissal, it was constitutionally impermissible to assess him court costs and to allow those costs to be deducted from his prisoner trust account. We conclude trial counsel provided objectively reasonable assistance when he advised the defendant, in light of the evidence, not to testify. Appellate counsel did not render ineffective assistance on direct appeal when counsel's decision to forego raising certain issues, in favor of others, fell within the wide range of reasonable professional assistance. Finally, the defendant was not deprived of any constitutional right when he was assessed $105 in court costs in connection with the filing of this frivolous and patently without merit petition; nor was it error to permit the deduction of the costs from the defendant's prisoner trust account. We affirm the summary dismissal and the imposition and collection of court costs.

¶ 2                                    BACKGROUND

¶ 3    Defendant Jonathan Coleman was convicted of first degree murder in the December 2001 shooting death of Ricardo Cabrales, which the jury found the defendant proximately caused by the use of a firearm. He was sentenced to an aggregate term of 65 years. On direct appeal, we affirmed his conviction and sentence. *People v. Coleman*, 1-05-1008 (Mar. 2, 2007) (unpublished order under Supreme Court Rule 23). The supreme court denied his petition for leave to appeal. *People v. Coleman*, 224 Ill. 2d 580 (2007). On November 10, 2008, the defendant filed the instant *pro se* postconviction petition, which the circuit court found frivolous and patently without merit.

¶ 4    We briefly summarize the evidence from the defendant's jury trial. The defendant and

his brother were both reputed members of the Latin Kings street gang, while the victim was a member of the rival Latin Dragons gang. Several witnesses testified that the neighborhood where the shooting took place was dominated by the Latin Kings and that the two gangs were at war when the shooting occurred. On the day of the shooting, the victim had been working on his car in front of his house before walking to a nearby garage. At the garage, he was given a bottle of radiator fluid and he headed back to his home through an alley. While walking down the alley he was approached from behind by a maroon-colored car. Witnesses heard several gunshots and heard the victim scream. One witness described seeing the maroon car drive away from the scene of the shooting with the barrel of a gun sticking out the window. Three witnesses saw the defendant and his brother driving in a vehicle matching that description. One witness testified he saw the defendant sitting in the backseat of the car as it sped away from the scene of the shooting with the defendant's brother at the wheel. Each of these witnesses identified the defendant in a lineup.

¶ 5        A detective testified the defendant confessed to the crime during his custodial interrogation, though the detective failed to memorialize the confession. According to the detective, the defendant stated he and his brother were driving around the neighborhood looking for marijuana when they saw the victim working on his car. The defendant claimed the victim had shot at him in the past and the defendant wanted to avenge the shooting. The brothers obtained a rifle from a fellow Latin King and returned to search out the victim. When they located him in the alley, they drove up behind him and the defendant opened fire. The victim died of multiple gunshot wounds. Investigating officers were never able to recover the firearm or the vehicle used in the homicide.

¶ 6                              Postconviction Petition

¶ 7        The defendant filed a 31-page postconviction petition, raising 11 constitutional claims, some with subparts, with citation to authority for each of his claims. The petition concluded with sections titled "Waiver" and "Fundamental Fairness." Before this court, the defendant raises only two constitutional claims: ineffectiveness of trial counsel and ineffectiveness of appellate counsel. The defendant alleged in his petition that his "trial counsel prevented him from testifying in his defense." He also claimed defense counsel never fully explained his right to testify. The defendant alleged appellate counsel was ineffective because he failed to challenge "wholly meritorious issues on appeal." In his brief, the defendant argues that specific remarks during the State's closing argument, which we set out below in detail, were completely unsupported by the evidence at trial.

¶ 8                                   Court Costs

¶ 9        Alternatively, the defendant contends that even if his postconviction petition was properly dismissed, the circuit court erred in assessing $105 in court costs for filing a frivolous petition. He argues the assessment of fees violates both his due process and equal protection rights and it was improper for the court to permit the payment of the costs from the funds in his prisoner trust account.

¶ 10                                          ANALYSIS

¶ 11     The Illinois Post-Conviction Hearing Act (Act) provides any person imprisoned in the penitentiary the right to relief if he can establish that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois." 725 ILCS 5/122-1(a)(1) (West 2008). However, a postconviction petition may be summarily dismissed if "the court determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2008). A frivolous or patently without merit postconviction petition is a "petition [that] has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 12 (2009). An example of "[a] petition [that] lacks an arguable basis either in law or in fact is one *** based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16.

¶ 12     Under *Hodges*, when a postconviction defendant asserts a claim of ineffective assistance of counsel, a court of review asks whether "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* at 17; see *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984). To prove deficient performance, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 688-89. To prove prejudice there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. The same standard applies to trial and appellate counsel. *People v. Tenner*, 175 Ill. 2d 372, 378 (1997). Summary dismissals are reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 389 (1998).

¶ 13     Claims of ineffective assistance of counsel are reviewed with certain principles in mind. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).


¶ 14                                        Trial Counsel

¶ 15     In his *pro se* petition, the defendant raised a single claim of ineffective assistance of trial counsel that he divided into four subparts. We quote from the only subpart that asserted the defendant's right to testify was infringed upon: "Petitioner was denied effective assistance of counsel where trial counsel prevented him from testifying in his defense and failed to advise petitioner that he had a right to testify." According to the defendant, he spoke to defense counsel before his case went to trial. The defendant alleges, "petitioner notified his attorney that he wanted to explain his innocence and asked his attorney if he could do so." Defense counsel replied "by saying ' it would be a bad idea for me to put you on the stand

-4-

at trial because it will give the state the opportunity to bring up your background, also because it will be the police's word against yours.' " The defendant did not testify at trial.

¶ 16    The Post-Conviction Act provides: "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2008). Our supreme court has repeatedly reminded the appellate court that it is not free to ignore the clear language of the Act. "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Davis*, 156 Ill. 2d 149, 158-60 (1993). See *People v. Jones*, 213 Ill. 2d 498, 508 (2004) ("[T]he appellate court raised the issue *sua sponte* despite the fact that defendant neither included it in his postconviction petition nor argued it in his appellate brief. Under the clear language of the Act and under this court's own case law, the appellate court should not have acted in such manner.").

¶ 17    Nor does the fundamental fairness doctrine give us authority to review an issue not raised in the defendant's postconviction petition. Only the supreme court has authority to disregard forfeiture to maintain "a sound and uniform body of precedent which may sometimes ' "override the considerations of waiver that stem from the adversary character of our system." ' " *People v. Jones*, 211 Ill. 2d 140, 145 (2004) (quoting *People v. De La Paz*, 204 Ill. 2d 426, 432-33 (2003), quoting *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967)). "[T]he appellate court [does] not possess [the supreme] court's supervisory authority to recognize procedurally defaulted claims." *Jones*, 211 Ill. 2d at 147.

¶ 18    Nor does appellate counsel, on behalf of the defendant, have the authority to raise a claim on appeal from the first-stage dismissal of a postconviction petition that is not raised in the petition itself. "[W]hen appellate counsel discover errors not raised by their clients during the summary, first-stage postconviction proceedings, the proper course of action for counsel to take is to file a successive petition in which the newly found claim is properly alleged." *Jones*, 213 Ill. 2d at 509.

¶ 19    The limitations on issues that may be raised on appeal following a first-stage dismissal of a postconviction petition bring us to the real difficulty with a portion of the ineffectiveness of trial counsel claim raised before us. On behalf of the defendant, appellate counsel contends "trial counsel misinformed Jonathan that if he were to testify, Jonathan's prior *juvenile adjudications of guilt* would be admissible for impeachment." (Emphasis added.)

¶ 20    We have reviewed the entire postconviction petition filed by the defendant; nowhere do we find any mention that his trial counsel told the defendant that counsel was concerned that the State would cross-examine the defendant on his *juvenile adjudications of guilt* were he to testify. We quote exactly the pertinent part of the defendant's petition: "Petitioner spoke to his trial attorny before he went to trial, During this conversation petitioner notified his attorney that he wanted to explain his innocence and asked his attorney if he could do so. Trial counsel replied by saying 'it would be a bad idea for me to put you on the stand at trial because it will give the state an opportunity to bring up your background, also because it will be the police's word against yours.' " A liberal reading of this allegation does not support a claim that defense counsel's concern was over the defendant's juvenile background.

¶ 21    Nonetheless, appellate counsel reads the statement attributed to defense counsel as

referencing the defendant's juvenile adjudications of guilt, which he contends was erroneous advice because juvenile adjudications would not be admissible during the defendant's cross-examination under the holding, which we take from his main brief, in "*People v. Harris*, 231 Ill. 2d 582, 588 (2008) (recognizing that juvenile adjudications are generally inadmissible)."

¶ 22 Setting aside whether juvenile adjudications remain inadmissible in light of the amendment, effective January 1, 1999, to section 5-150(1)(c)[1] of the Juvenile Court Act of 1987, which expressly provides the contrary, we find nothing in the postconviction petition that supports the interpretation appellate counsel gives to defense counsel's statement. The petition contains not a single reference to the defendant's juvenile adjudications of guilt. The record of the trial court proceedings also fails to support this reading of defense counsel's statement to the defendant. Nor did the defendant present an affidavit attesting that his juvenile adjudications came up in a conversation he had with defense counsel. See *People v. Brown*, 54 Ill. 2d 21, 24 (1973) ("Neither in the post-conviction petition in this case, with its reference to conversations which took place between the defendant and his attorney well in advance of the beginning of the trial, nor in the supporting affidavit, is there any statement that the defendant, when the time came for him to testify, told his lawyer that he wanted to do so despite advice to the contrary.").

¶ 23 In light of the total absence of a mention of the defendant's "juvenile background" in the postconviction petition, we are compelled to reject the interpretation appellate counsel gives to defense counsel's statement regarding the wisdom of the defendant testifying. See *Jones*, 213 Ill. 2d at 509 ("[W]hen appellate counsel discover errors not raised by their clients during the summary, first-stage postconviction proceedings, the proper course of action for counsel to take is to file a successive petition in which the newly found claim is properly alleged."); *Davis*, 156 Ill. 2d at 158 ("Any claim of substantial denial of constitutional rights not raised in the original *** petition is waived.").

¶ 24 It is much more likely that trial counsel's reference to the defendant's "background" was to the admissions the defendant made during his interrogation by the police. According to the interrogating detective, the defendant claimed the victim had previously shot at the defendant, which he explained prompted his own shooting of the victim. The statement the defendant connected in his petition with trial counsel's concern over the defendant's "background" that it would "be the police's word against yours" bolsters this meaning of "background." Were the defendant to testify, he would also have to deny confessing to the murder during his interrogation by the police.

¶ 25 Defense counsel's statement in the defendant's postconviction petition cannot be read as referencing the defendant's juvenile background when there were far more prejudicial

---

[1]"Evidence and adjudications in proceedings under this Act shall be admissible: *** (c) in proceedings *** in which anyone who has been adjudicated delinquent under Section 5-105 is to be a witness including the minor or defendant if he or she testifies, and then only for the purposes of impeachment and pursuant to the rules of evidence for criminal trial[.]" 705 ILCS 405/5-150(1)(c) (West 2008). See *People v. Rodriguez*, 408 Ill. App. 3d 782, 794 (2011) (noting the "split of authority among the districts of this court on the application of the [impeachment] rule").

aspects to the defendant's "background" to concern defense counsel. Without an allegation in the petition that supports the inference appellate counsel draws or an affidavit from the defendant that he spoke with his defense counsel about his "juvenile background," we conclude appellate counsel goes outside the allegations in the postconviction petition to raise the contention that defense counsel advised the defendant against testifying because "Jonathan's prior *juvenile adjudications of guilt* would be admissible for impeachment." (Emphasis added.)

¶ 26    Appellate counsel's interpretation of the statement in the postconviction petition in a way that might best improve the defendant's chances for a remand for second-stage proceedings is reminiscent of the representation noted by our supreme court that, though zealous, is not permitted under the Act.

> "Stated bluntly, the typical *pro se* litigant will draft an inartful pleading which does not survive scrutiny under the 'frivolity/patently without merit' standard of section 122-2.1, and it is only during the appellate process, when the discerning eyes of an attorney are reviewing the record, that the more complex errors that a nonattorney cannot glean are discovered. The appellate attorney, not wishing to be remiss in his or her duty, then adds the newly discovered error to the appeal despite the fact that the claim was never considered by the trial court in the course of its ruling. The thought process behind the attorney's actions is clear–the attorney is zealously guarding the client's rights and is attempting to conserve judicial resources by raising the claim expeditiously at the first available chance. These goals are laudable, but they nonetheless conflict with the nature of appellate review and the strictures of the Act.

> This court has recognized that the 'question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.' [Citation.] In light of this standard and the plain language of section 122-3 of the Act, this court has generally held that a claim not raised in a petition cannot be argued for the first time on appeal." *Jones*, 213 Ill. 2d at 504-05 (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)).

¶ 27    The argument urged before us that "Jonathan Coleman's trial attorney *** misinformed Jonathan that, if he were to testify, Jonathan's prior juvenile adjudications would be admissible for impeachment" was not raised in the defendant's postconviction petition and cannot now be urged before us. *Jones*, 213 Ill. 2d at 505; *Brown*, 54 Ill. 2d at 24.

¶ 28    The defendant did allege in his petition that defense counsel "prevented him from testifying in his defense and failed to advise petitioner that he had the right to testify." Appellate counsel argues this contention before us: "Jonathan Coleman's trial attorney failed to adequately advise Jonathan about his right to testify." We address that claim on its merits.

¶ 29    As a general rule, advice not to testify is a matter of trial strategy that does not amount to ineffective assistance of counsel unless counsel refused to allow the defendant to testify. *People v. Youngblood*, 389 Ill. App. 3d 209, 215 (2009). The defendant contends his defense attorney "did not explain Jonathan's right to testify in detail, so Jonathan erroneously

believed that 'it was his trial attorney's decision whether [Jonathan] testified or not.' " The defendant principally relies on this court's decision in *People v. Smith*, 326 Ill. App. 3d 831 (2001), for his contention that his petition presents an arguable claim that his trial counsel was ineffective. We find *Smith* distinguishable.

¶ 30    In *Smith*, assisted by retained counsel, the defendant raised 10 claims of ineffective assistance of trial counsel in his postconviction petition, which the circuit court summarily dismissed. Only the claim concerning the *Smith* defendant's right to testify is germane to the issue before us. We held that trial counsel in *Smith* gave erroneous advice, which the defendant relied upon to decide not to take the stand. Ultimately, we concluded it was arguable that the erroneous advice trial counsel gave was not objectively reasonable. *Id.* at 846.

¶ 31    As we made clear above, no valid claim can be made here that defense counsel gave the defendant erroneous advice to dissuade him from testifying. Rather, trial counsel simply gave his professional opinion, based on the evidence in the case, that taking the stand by the defendant was a "bad idea." That statement cannot form the basis of a claim that the advice was not objectively reasonable when trial counsel's statement amounts to no more than his professional opinion based on the circumstances presented by the case. See *People v. Knox*, 58 Ill. App. 3d 761, 767 (1978).

¶ 32    While the decision whether to testify is the defendant's to make, that decision should be made "*with the advice of counsel*." (Emphasis added.) *Knox*, 58 Ill. App. 3d at 767. The *Knox* court cautioned against blindly accepting claims such as the one the defendant makes here.

> " 'By hypothesis, in every case in which the issue is raised, the lawyer's advice [not to testify] will in retrospect appear to the defendant to have been bad advice, and he will stand to gain if he can succeed in establishing that he did not testify because his lawyer refused to permit him to do so.' " *Knox*, 58 Ill. App. 3d at 767-68 (quoting *Brown*, 54 Ill. 2d at 24).

¶ 33    If the defendant, as he claims, needed more details to be fully apprised of his right to testify, he need only to have asked his defense counsel. The defendant does not allege that he made such a request and counsel refused to provide him with the "adequate" explanation he now claims he needed. The record also demonstrates that the right of the defendant *not* to testify was explained to everyone in the courtroom during *voir dire*. Logic dictates that if the defendant had the right *not* to testify, he had the right to testify. The circuit court noted, and we repeated in rejecting his direct appeal, that the defendant was "an intelligent young man who had considerable experience with the criminal justice system." *Coleman*, No. 1-05-1008 (unpublished order under Supreme Court Rule 23). Also, defense counsel's statement to the trial court that the defendant would rest without presenting any evidence prompted no response from the defendant, which suggests precisely the situation the *Knox* court cautioned against: "[A defendant] will stand to gain if he can succeed in establishing that he did not testify because his lawyer refused to permit him to do so." (Internal quotation marks omitted.) *Knox*, 58 Ill. App. 3d at 767-68.

¶ 34    The defendant's postconviction petition, which claims nothing more than he was

"prevented from testifying [because his defense attorney] failed to advise petitioner that he had a right to testify," is insufficient to overcome the strong presumption that the advice defense counsel gave was the product of reasonable trial strategy in light of the evidence, not incompetence based on an erroneous understanding of controlling law. *Cf. Smith*, 326 Ill. App. 3d at 846. Nor does the defendant allege that his testimony, taking as true the defendant's claim that he wanted to testify, would have made any difference in this case in light of all the evidence that pointed to his guilt. See *Youngblood*, 389 Ill. App. 3d at 218 ("Indeed, it has been expressly held that a defendant must show prejudice from the denial of his right to testify in order to make out a claim of ineffective assistance of counsel."). To hold otherwise would mean that whenever a defendant is advised by defense counsel that taking the stand is a bad idea, it would necessarily follow that the defendant has an arguable claim of ineffective assistance of counsel by simply claiming that he wanted to testify, but did not because defense advised against it.

¶ 35     We find no allegation in the petition that defense counsel prevented or refused to allow the defendant to testify on his own behalf. The circuit court properly dismissed this claim as frivolous and patently without merit.

¶ 36                                        Appellate Counsel

¶ 37     The defendant next contends that appellate counsel rendered ineffective assistance when counsel failed to raise in his direct appeal "wholly meritorious issues." We set out in detail the issues the defendant contends should have been raised.

¶ 38     The defendant claims the prosecution made inflammatory statements during closing arguments regarding the supposed gang motive behind the crime. The defendant alleges the following statements deprived him of a fair trial.

> "[Assistant State's Attorney]: The defendant decided to shoot and kill [the decedent]. Why? Because the defendant is a member of the Latin Kings street gang and the neighborhood where [the decedent] lived was run by the Latin Kings and because [the decedent] was not a member of that gang. *** In the United States people are guaranteed certain freedoms, the freedom of religion, the freedom of speech, the freedom to walk the streets of the city where they live in their own neighborhood. The defendant took away that freedom. The defendant did not want [the victim] in the neighborhood that was run by his gang. When you go back and deliberate, think of how senseless this violence was and return with a verdict of guilty."

The defendant argues these remarks improperly turned the case into a referendum on gang violence.

¶ 39     He further alleges the State's arguments during rebuttal, regarding the vehicle that was allegedly used during the murder, constituted misconduct. During his closing remarks, defense counsel argued:

> "[Defense counsel]: Did [the prosecution] present you with any title evidence from the Secretary of State saying that [the defendant or his family members] owned some sort of red car? Not a thing. Nothing. There's not one shred of evidence in the

trial from any witness that any Coleman ever owned a red car."

The State responded in rebuttal:

> "[Assistant State's Attorney]: And, no, you're not going to see the registration because that car is gone. That car is sitting in a garage and it was sitting a [*sic*] as soon as those two young men–
>
> [Defense counsel]: Objection. ***
>
> THE COURT: Overruled. She may argue.
>
> [Assistant State's Attorney]: –could get it hidden. It was gone *** the red car is not going to be there. And you know what, guess what, the red car is not even going to be registered. Ladies and gentlemen you are from the big city of Chicago. You are aware that sometimes cars aren't registered. Cars come and go, especially in this case–
>
> [Defense counsel]: Objection, your Honor.
>
> THE COURT: Overruled[.] She may argue.
>
> [Assistant State's Attorney]: –what is described as a beater car."

The defendant argues the State's remarks were completely unsupported by the evidence at trial.

¶ 40　The defendant also contends appellate counsel should have raised as error the prosecutor's comment that "[defense] counsel says the police dropped the ball. Not a new argument. Not a new argument." He claims this comment was an improper attack on the defense's theory of the case.

¶ 41　The defendant claims appellate counsel's failure to raise the above issues on direct appeal rendered counsel's representation ineffective.

¶ 42　"Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Even where "the prosecutor's comment exceeded the bounds of proper argument, the verdict will not be disturbed unless the remark caused substantial prejudice to the defendant, taking into account the content and context of the comment, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." *People v. Johnson*, 208 Ill. 2d 53, 115 (2003) (citing *People v. Williams*, 192 Ill. 2d 548, 573 (2000)).

¶ 43　To warrant a remand for second-stage consideration of the defendant's postconviction petition alleging ineffectiveness of appellate counsel for failure to raise the issues set out above, the defendant must demonstrate that "it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. In order to demonstrate arguable prejudice, he must demonstrate that but for appellate counsel's unprofessional errors, there is a reasonable probability the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. We find the defendant cannot meet that standard here.

¶ 44　It was a matter of appellate counsel's professional judgment to select the arguments on

appeal that presented the best chances of success. We are unconvinced that the issues the defendant now contends should have been raised had a better chance of success than those actually pursued. Simply because the arguments raised on direct appeal were not successful does not mean the choice to pursue them, over possible others, fell outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The defendant here has failed to overcome the strong presumption that appellate counsel's representation was sound appellate strategy. While appellate counsel's decision as to which issues to raise is not beyond review by this court, we are presented with no arguable claim of prejudice to cause us to second-guess counsel's decision to pursue only certain issues on direct appeal. See *Easley*, 192 Ill. 2d at 329 ("defendant has suffered no prejudice from counsel's failure to raise [nonmeritorious issues] on appeal").

¶ 45   Appellate counsel's representation in raising claims other than those the defendant now contends should have been raised was not arguably objectively unreasonable and caused no prejudice to the defendant. The defendant's claim of ineffectiveness of appellate counsel was frivolous and patently without merit.

¶ 46                                    Assessment of Costs

¶ 47   The defendant finally contends that it was a violation of both equal protection and due process for the trial court to assess $105 in fees for the filing of this frivolous petition pursuant to section 22-105(a) of the Code of Civil Procedure. 735 ILCS 5/22-105(a) (West 2008). The defendant also contends it was improper to deduct the costs from his prisoner trust account.

¶ 48   This court has rejected constitutional challenges to the assessment of fees pursuant to section 22-105(a). See *People v. Dixon*, 409 Ill. App. 3d 915, 925 (2011) (citing *People v. Smith*, 383 Ill. App. 3d 1078, 1094-95 (2008)). We also have concluded that the payment of such costs from a prisoner trust account is an allowable means of collecting those fees. *Dixon*, 409 Ill. App. 3d at 925.

¶ 49   We are unpersuaded by this case to reexamine our position.

¶ 50                                      CONCLUSION

¶ 51   The circuit court did not err in summarily dismissing the defendant's postconviction petition alleging ineffective assistance of counsel. Specifically, the defendant failed to overcome the strong presumption that defense counsel's advice that the defendant not testify was reasonable trial strategy and therefore not objectively unreasonable. Nor did counsel's advice prevent the defendant from testifying where the defendant failed to voice a desire to testify at the time of trial. Appellate counsel's decision to forego raising the issues the defendant now urges should have been raised was not patently wrong, which means the selection of issues to raise on direct appeal fell within the wide range of reasonable professional assistance. Finally, the defendant was not deprived of any constitutional right when he was assessed court costs for filing this frivolous and patently without merit petition; nor was it error to permit the court costs to be deducted from the defendant's prisoner trust account.

¶ 52         Affirmed.