# Illinois Official Reports

## Appellate Court

---

### *People v. Hernandez*, 2014 IL App (2d) 131082

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELVER HERNANDEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-1082 |
| Filed | October 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Following defendant's conviction for first-degree murder at a stipulated bench trial arising from an incident in which defendant and his brother made a Molotov cocktail and defendant's brother "cocktailed" the house where the intended victim lived, the trial court properly dismissed defendant's *pro se* postconviction petition as frivolous and patently without merit, despite his allegations that the trial court never mentioned the imposition of a period of mandatory supervised release, that his trial counsel never advised him of the State's actual plea offer, misrepresented why defendant should proceed with a stipulated bench trial, and did not investigate the defendant's affirmative defenses or advise him of his right to testify, and that his appellate counsel failed to raise those issues in defendant's direct appeal, since his allegations were all directly contradicted by the record and he could not establish prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-CF-1875; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Isuf Kola, of Law Offices of Isuf Kola & Associates, Ltd., of Glen Ellyn, for appellant.

Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Aline Dias, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      Following a stipulated bench trial, defendant was convicted of first-degree murder after he and his brother, Edwin Hernandez, set fire to a home, killing a 12-year-old boy and seriously injuring the boy's family members (including the boy's mother, who was apparently paralyzed after she jumped from a second-story window to escape the fire). The crime was gang-related, and the intended target of the crime was not home.

¶ 2      During the investigation, defendant, in a videotaped statement, confessed to the crime. The court denied his motion to suppress the confession. Because the denial of his motion to suppress could not be appealed if he entered a guilty plea, defendant proceeded with a stipulated bench trial to preserve his appellate rights regarding the confession's admissibility.[1] After finding defendant guilty and denying defendant's posttrial motion (which attacked the suppression ruling), the court sentenced defendant to 84 years' imprisonment, followed by 3 years of mandatory supervised release (MSR). Defendant appealed, arguing that the confession should have been suppressed (and challenging his eligibility for extended-term sentencing and a public defender fee), and this court affirmed the denial of the motion to suppress. *People v. Hernandez*, 2012 IL App (2d) 110817-U, ¶ 14.

---

[1]As will become relevant below, we note that a transcript of the confession is contained in the record as part of the stipulated evidence at defendant's bench trial. The transcript reflects defendant confessing to police that, on the night of the murder (which occurred only five days after defendant was released from a three-month period in the county jail), he and Edwin, under "order" by other Latin Kings, made a Molotov cocktail at their house. They walked to the victims' house, where defendant smashed van windows with a pipe while Edwin "cocktailed the house"; they saw flames and ran away. Defendant stated, "it wasn't meant to be like that." Defendant knew that the target lived with his family, including his mother, sister, and brother, whom defendant previously met when he was invited to a party at the home. Defendant's account was corroborated by Edwin's similar confession. We further note that, at the motion-to-suppress hearing, which took place over several days, defense counsel conducted lengthy cross-examinations of the investigating officers, provided a detailed closing argument, and represented that he and defendant strategically chose not to present other evidence or defendant's testimony.

¶ 3    On June 4, 2013, defendant filed a *pro se* postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2012)), arguing: (1) that the application of MSR was unconstitutional; and (2) that he was denied effective assistance of trial and appellate counsel. The petition is signed by defendant and notarized. One notarized affidavit, from Edwin, is attached to the petition. In his affidavit, Edwin attests that, on the night of the crime, defendant was asleep and did not leave his house. Further, Edwin attests that he wanted to testify at defendant's trial, that he told this to defendant and defendant informed his attorney, but that defendant told him that his attorney did not respond to the information and no one contacted Edwin about testifying. Finally, in a handwritten note included with his petition, defendant writes that he was waiting for an affidavit from Nidia Hernandez (his sister), but that, due to mail delays, he had not yet received it.[2]

¶ 4    On September 19, 2013, in a lengthy written decision, the court denied the postconviction petition as frivolous and patently without merit. Defendant appeals. Because defendant's allegations are directly contradicted by the record and he cannot establish prejudice, we affirm.

¶ 5                                I. ANALYSIS

¶ 6    The Act establishes a three-stage process for adjudicating postconviction petitions. *People v. Hommerson*, 2013 IL App (2d) 110805, ¶ 7. At the first stage (as here), the trial court considers, without input from the State, whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). A claim is frivolous or patently without merit where it is "completely contradicted by the record" or where it has no "arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). Where the petition's allegations are contradicted by the record, the petition should be dismissed. *People v. Torres*, 228 Ill. 2d 382, 394 (2008). A dismissal of a postconviction petition at the first stage is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 7                             A. MSR Allegations

¶ 8    We start by considering defendant's postconviction claim that his three-year MSR term is unconstitutional because the court did not mention MSR, the mittimus does not reflect imposition of MSR, and the MSR period increases his sentence without due process of law. This claim is directly rebutted by the record and fails as a matter of law.

¶ 9    First, at his June 17, 2009, arraignment, the court informed defendant at least twice that the State was seeking an extended-term sentence of 60 to 100 years "*followed* by three years of mandatory supervised release or parole." (Emphasis added.) Defendant stated that he understood. Further, at sentencing, the court stated that "*upon completing* the sentence the court imposes[, defendant] is subjected to a period of mandatory supervised release of three years." (Emphasis added.) Second, the August 15, 2011, mittimus specifically reflects both defendant's "sentence" (84 years) and "MSR" (3 years). Third, it is well established that the

_____

[2]As defendant's petition is signed and notarized, as most of his claims allege ineffective assistance of both trial and appellate counsel, and as he alleges ineffectiveness based on matters outside of the record, we do not find his claims barred by waiver or forfeiture principles or a failure to attach his attorneys' affidavits. See, *e.g.*, *People v. Mallory*, 371 Ill. App. 3d 477, 480-81 (2007); see also *People v. Hall*, 217 Ill. 2d 324, 332 (2005).

- 3 -

prison term and the period of MSR are two parts of the same sentence, not two different sentences, and, thus, MSR does not constitute the imposition of an additional sentence without due process. See, *e.g.*, *People v. Lee*, 2012 IL App (4th) 110403, ¶ 32. Thus, the court properly dismissed defendant's postconviction claim challenging MSR.

¶ 10                    B. Ineffective-Assistance-of-Trial-Counsel Allegations

¶ 11    Defendant's petition next alleges that, for six reasons, trial counsel's performance was ineffective: (1) counsel failed to communicate to defendant the State's plea offer; (2) counsel made affirmative misrepresentations to defendant that rendered defendant's jury waiver involuntary; (3) counsel failed to raise any affirmative defenses, in particular an alibi defense, on defendant's behalf; (4) counsel failed to make opening and closing arguments in support of defendant's case; (5) counsel did not allow defendant to testify at trial; and (6) at sentencing, counsel failed to present mitigating evidence or confront the State's incorrect aggravating evidence. Defendant also claims that the aforementioned alleged errors cumulatively deprived defendant of effective trial assistance.

¶ 12    At the first stage of postconviction proceedings, an ineffective-assistance-of-counsel claim may not be dismissed if it is arguable that: (1) counsel's performance fell below an objective standard of reasonableness (performance prong); *and* (2) the defendant was prejudiced (prejudice prong). *Hodges*, 234 Ill. 2d at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). The performance prong requires us to consider whether, applying a strong presumption that counsel's representation fell within the wide range of reasonable assistance (see *Strickland*, 466 U.S. at 689), there is an arguable basis to find that counsel's performance was "objectively unreasonable under prevailing professional norms." *People v. Cathey*, 2012 IL 111746, ¶ 23. The prejudice prong requires us to ask whether there is an arguable basis to conclude that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* The failure to satisfy either prong will defeat the ineffective-assistance claim. *People v. Williams*, 193 Ill. 2d 306, 375 (2000). We now address and reject each of defendant's ineffective-assistance claims.

¶ 13                        1. Alleged Failure to Communicate Plea

¶ 14    Defendant alleges that defense counsel told him, "off the record," that the State would offer no less than 30 years' imprisonment if defendant would plead guilty and testify against Edwin. Defendant rejected that offer. However, defendant alleges that counsel did *not* communicate to him the State's *actual* offer, which would have allowed him to plead guilty to first-degree murder with a sentencing range of 20 to 60 years, instead of 60 to 100 years (by amending the charges to remove the sentencing-enhancement factors). That offer, defendant notes, did not require him to testify against Edwin, nor did it have a minimum 30-year sentence. Accordingly, defendant alleges that, had he known of the offer, he would have accepted it. Defendant contends that he learned of the State's offer only after reading the record of proceedings.

¶ 15    A defendant has the right to decide whether to plead guilty. *People v. Trujillo*, 2012 IL App (1st) 103212, ¶ 9. Further, defense counsel has a duty to communicate to the defendant formal offers from the prosecution, and a failure to do so may present an arguable claim of deficient performance. *Id.* ¶¶ 9-10. In *Trujillo*, the defendant alleged in his postconviction

petition that his trial counsel never told him that the State had extended a plea offer. The court held that the defendant's ineffective-assistance claim had been erroneously dismissed at the first stage. *However*, before doing so, it also determined that "the record fails to show that the trial court admonished the defendant about a guilty plea offer *** and therefore does not positively rebut the defendant's allegation that he did not know of the offer." *Id.* ¶ 13. Therefore, even where a defendant alleges that counsel did not properly communicate an offer, if the record rebuts the allegation that a defendant did not know of the offer, summary dismissal of the petition may remain proper.

¶ 16    Here, the record positively rebuts defendant's assertions that he learned of the State's offer only when he read the record of proceedings and that, had he known of the offer, he would have accepted it. Specifically, on June 27, 2011, with defendant *present*, the State informed the court that it "did make an offer, taking the enhancement off of one of the murder charges, allowing the defendant[ ] to then plead to a sentencing cap of 60. That offer was extended." Then, defense counsel represented to the court that he had spoken with defendant numerous times regarding the State's offer and its conditions. In light of the offer, counsel recounted, he and defendant discussed that defendant could proceed to trial by judge or jury, proceed to a stipulated bench trial, or accept the plea "taking the enhancer off the murder; that he would be looking at sentencing within a 20- to 60-year range." Counsel represented, asking defendant to correct him if he was wrong, that defendant wished to proceed with a stipulated bench trial. Defendant stated that counsel was correct. Counsel then reiterated twice more that defendant still had time to decide whether he wished to accept the State's offer of a blind plea with the 20- to 60-year sentencing range. Finally, the court discussed with defendant that the State had made an offer that would reduce the sentencing range to 20 to 60 years, as opposed to 60 to 100 years. The court reminded defendant that it was an important decision and that, while he should listen to advice of counsel, the decision was ultimately his to make. Defendant repeatedly stated that he understood.

¶ 17    The record, therefore, affirmatively rebuts defendant's allegations that he did not know the State's "true" offer and that, if he had known of the offer, he would have accepted it. Defendant concedes that the court and counsel informed him of and questioned him about the State's offer. However, he asserts, without citation to authority, that we should not find his allegations rebutted by the record, because the aforementioned discussion in court was "overridden" by counsel's comments off the record. We disagree. Simply put, it is not arguable that defendant was prejudiced by any failure of counsel to communicate off the record the State's offer of 20 to 60 years, because any error was clearly remedied by the numerous on-record explanations of the offer. The court properly dismissed this ineffective-assistance allegation.

¶ 18                    2. Alleged Misrepresentations and Jury Waiver

¶ 19    Next, defendant argues that, off the record, counsel recommended that he proceed with a bench trial, stating that defendant should waive a jury trial because a bench trial would be easier to appeal from and that, via a bench trial, it would be possible to appeal the suppression ruling. Defendant asserts that he relied on counsel's misrepresentations, that his jury waiver was therefore not voluntary, and that, absent those statements (as well as comments by the trial court allegedly affirming the erroneous advice), he would have elected a jury trial. Defendant argues that there was simply no tactical advantage to proceeding to a

- 5 -

stipulated bench trial, as opposed to a jury or nonstipulated bench trial. Finally, defendant again asserts without authority that any admonishments the court gave him on the record are overridden by counsel's affirmative misrepresentations off the record. We disagree.

¶ 20    To the extent that defendant inferred from counsel's advice that he could appeal the suppression ruling only via a bench trial (as opposed to a jury trial), that inference was rebutted by the record. Specifically, on June 27, 2011, at a pretrial proceeding, defendant was present with counsel, who summarized for the court that he and defendant had numerous conversations about defendant's options, which included proceeding to trial in front of a judge or jury, accepting the State's plea offer, or, alternatively, submitting to a stipulated bench trial, "where both sides would agree to the evidence that would be presented," and "that[,] if he did a stipulated bench trial, that he would be looking at the ability to appeal the court's ruling on the motions [to suppress the confession], which would be basically the only reason to go forward with a stipulated bench trial." In context, it is clear that counsel's reference to proceeding with a stipulated bench trial, whereby defendant could preserve the ability to appeal the court's suppression ruling, was to contrast that procedure not with a jury or nonstipulated bench trial but with *entering a guilty plea*, whereby defendant would forfeit his right to appeal the suppression ruling. See, *e.g.*, *People v. Horton*, 143 Ill. 2d 11, 22 (1991) (a guilty plea waives all nonjurisdictional defenses or defects, and "a stipulated bench trial can avoid the waiver rule while still allowing the parties to proceed with the benefits and conveniences of a guilty plea procedure"). Later, on July 1, 2011, the court again explained this concept to defendant, where it discussed the process for holding a stipulated bench trial and stated:

> "THE COURT: Sometimes this procedure is done because it is *a way* that a person can preserve the issue for appeal; in other words, we had those motions to suppress; and *if you want to appeal those issues, you can't plead guilty; you have to have a trial*; and this is *a way* to have a trial so that you can appeal the ruling on those motions.
>
> I want you to hear from me that you can still do that.
>
> Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: Is that part of your interest?
>
> DEFENDANT: Yes." (Emphases added.)

Accordingly, defendant's allegation that counsel induced him to believe that a bench trial (as opposed to a jury trial) would allow him to appeal the suppression ruling is rebutted by the record, which shows that he knew that it was a *trial* (as opposed to a *guilty plea*) that would preserve that appeal.

¶ 21    This leaves defendant's contention that counsel told him off the record that a bench trial is easier to appeal from than a jury trial, a misrepresentation without which defendant would have chosen a jury trial. As we read defendant's petition, the only specific way that an appeal would have been "easier," according to counsel, was that an appeal from a bench trial, unlike a jury trial, would have enabled defendant to raise the suppression issue. That is, we see this allegation as essentially a broader statement of the claim that we addressed above, and thus it fails for the same reason. The record shows that defendant knew that an appeal on the suppression issue required only a trial, not necessarily a bench trial.

¶ 22　　　More generally, the record belies any assertion that defendant did not voluntarily waive his right to a jury. To establish this point, lengthy recitation of the record is helpful. At the June 27, 2011, pretrial hearing, counsel stated that he had discussed with defendant the possibilities of proceeding with either a bench or a jury trial, and, further:

> "COUNSEL: I have discussed the evidence; I have discussed the evidence extensively with my client; the pluses and minuses; the advantages and disadvantages of going to trial. I have given him my opinion as to what the best course of action would be.
>
> And, [defendant]–correct me if I am wrong–but after having spoken [about] all that, it is your intention, and you want to go forward with doing a stipulated bench trial; is that correct?
>
> DEFENDANT: Yeah."

Counsel continued:

> "COUNSEL: We can do one of two things on Friday: We can either take the offer that was made by the State, which is a blind plea of guilty on the 20 to 60 years, which I understand you don't want to do; or we can go forward on Friday with a stipulated bench trial, in which case, as I said before, everybody would agree as to what the evidence would show at trial; the Judge would make a finding; you would have certain rights, then, on appeal.
>
> Both of these options are not open past Friday. If either one of those option[s] does not take place on Friday, on July 18th we will be going to trial.
>
> Do you understand that?
>
> DEFENDANT: Yeah.
>
> COUNSEL: You don't have to make a decision right now; but on Friday, if the case doesn't end either by a plea within the 20 to 60 range or stipulated bench trial, on July 18th we are going to trial.
>
> Do you understand that?
>
> DEFENDANT: Yeah.
>
> COUNSEL: And I have explained that to you?
>
> DEFENDANT: Yes."

¶ 23　　　The trial court then reviewed the options of a plea agreement, "regular trial; either by a judge or by a jury," or a stipulated bench trial, "that's not a plea of guilty. That's a trial just where all the evidence comes in by agreement. It takes five or ten minutes instead of four or five days. But that's where [in contrast to the plea offer], I would sentence you to between 60 and 100 years in prison if I find you guilty of that." The court informed defendant that he should carefully consider the decision, that it was his decision to make, and that "*if you don't make a decision, that means we are having a jury trial*. That's how it works. Do you understand that, sir?" (Emphasis added.) Defendant answered, "Yes."

¶ 24　　　On July 1, 2011, defendant returned to court to waive his right to a jury and to proceed with a stipulated bench trial. Both counsel and the trial court again engaged in lengthy conversation with defendant about that choice:

> "COUNSEL: Based on our conversations; which we met at the jail many times; I talked with family members; do you understand what a stipulated bench trial is?

DEFENDANT: Yes.

COUNSEL: Do you understand today what we are doing is[,] instead of going forward with an actual trial in which the State is going to present witnesses[,] I get the opportunity to cross examine those witnesses[,] and we get the opportunity to put on witnesses after that[,] we are [instead] simply stipulating in writing as to what the State's witnesses would say were they to be called at trial? Do you understand that?

DEFENDANT: Yes.

COUNSEL: We arrived at this decision after months and months of consultation about your possible options on this; is that correct?

DEFENDANT: Yes.

\* \* \*

COUNSEL: Now, based on that[, *i.e.*, defendant's decision not to accept the State's plea offer], I told you you had a couple of options: We can do what we are doing today, which is called the stipulated bench trial; we could take it to an actual trial either in front of [the judge] *or in front of a jury of 12 people* who would sit and listen to the evidence on that; do you recall discussing all of those options?

DEFENDANT: Correct.

COUNSEL: Okay. And do you recall discussing with me the advantages and disadvantages of each of the options?

DEFENDANT: Yes.

COUNSEL: The advantages and disadvantages of going forward like you say you want to do today with a stipulated bench trial?

DEFENDANT: Right.

COUNSEL: The advantages and disadvantages of going to a trial with live witnesses either in front of a judge *or in front of a jury*.

DEFENDANT: Yes.

\* \* \*

COUNSEL: Based on my professional opinion, you came to your own conclusion as to what direction you wanted to go in[,] is that correct?

DEFENDANT: Correct.

\* \* \*

COUNSEL: I gave you my opinion[,] is that correct?

DEFENDANT: Your opinion.

COUNSEL: Okay. Now, what you are doing today is based on your analysis of what I told you[,] and is your own decision[,] is that right?

DEFENDANT: Correct.

\* \* \*

COUNSEL: Once again, I won't beat a dead horse; but I just want to ask you, this will be the last time: Is this what you want to do today?

DEFENDANT: Yes." (Emphases added.)

Defendant further agreed that he: (1) understood that giving up his right to a trial by jury meant that no jurors would listen to the evidence; (2) had considered counsel's advice, but

came to his own conclusion about which option to pursue; (3) did not feel in any way coerced, threatened, or pressured to proceed with a stipulated bench trial; and (4) felt that he and counsel had sufficiently discussed the options and that he understood what he was choosing.

¶ 25　　　　Thereafter, the trial court *further* admonished defendant about his choice. Specifically, the court explained:

"THE COURT: You have a right to have this case decided by a jury. A jury is 12 people who are picked from the community. They would come to court[,] listen to the evidence[,] and before you could be found guilty, they would have to unanimously decide that the evidence is sufficient to prove you guilty beyond a reasonable doubt.

Do you understand what a jury is?

DEFENDANT: Yes.

THE COURT: I was handed this form marked Waiver of Jury Trial; is this your signature, and are these your initials?

DEFENDANT: Yes.

THE COURT: By signing this form and initialing it here, you understand that there will not be a jury; it will be a judge like I just underlined, me, who will decide whether or not evidence is sufficient to prove you guilty beyond a reasonable doubt.

DEFENDANT: Yes.

THE COURT: Have you spoken to [counsel] about this?

DEFENDANT: Yes.

COURT: It is an important decision. It is one you should ask him for his advice. But in the end, advice is all he can give you; it has to be your decision to make.

Do you understand that?

DEFENDANT: Yes.

THE COURT: *Do you have any more questions for [counsel] about this; or any questions for me, for that matter*?

DEFENDANT: No.

THE COURT: Do you want to have a jury decide this case or a judge decide this case?

DEFENDANT: Stipulated bench trial.

THE COURT: Has anyone forced you or threatened you to get you to make this decision?

DEFENDANT: No.

THE COURT: Has anyone promised you anything at all in exchange for this?

DEFENDANT: No.

THE COURT: You are making this decision of your own free will?

DEFENDANT: Yes.

THE COURT: All right. The Court finds the defendant has made a knowing and voluntary waiver of a jury." (Emphasis added.)

¶ 26　　　　In light of the foregoing on-the-record discussions, we find completely disingenuous defendant's assertion that his jury waiver was involuntary. Indeed, the court noted that

defendant "strikes me[,] from what I have seen of him, not only today but throughout the hearing, as well as in other information[,] to be an intelligent young man who is trying to make the best of a bad situation perhaps." Counsel agreed, adding, "in my conversations with [defendant], I have never had any problems communicating. I have never had any indication that he hasn't understood what I have had to say. And we have been able to look at what our options are in a very analytical manner." Therefore, as the record reflects that defendant was thoroughly admonished on the record about his options and that he knowingly chose a stipulated bench trial, it is not arguable that his jury waiver was involuntary.

¶ 27    Further, we note that defendant asserts that, had he proceeded with a jury trial or a nonstipulated bench trial, he would have stood a stronger chance of success on the merits. We completely disagree. Given defendant's videotaped confession, he would have had virtually no chance of success at a trial of any kind. Accordingly, for all of the foregoing reasons, the court properly dismissed this ineffective-assistance claim.

¶ 28                                    3. Remaining Claims

¶ 29    We combine our analysis of defendant's remaining challenges to trial counsel's effectiveness, as they all generally fall under the broad category of trial preparation and performance. Those challenges include defendant's contentions that counsel failed to: (1) investigate or present affirmative defenses, particularly an alibi defense; (2) offer opening and closing statements; (3) properly advise defendant about his right to testify; and (4) investigate mitigating evidence and challenge the State's aggravating evidence. Each of these claims fails.

¶ 30    First, defendant argues that counsel never investigated his alibi defense, as supported by Edwin's affidavit, that, when the crime occurred, defendant was at home sleeping. On the record, however, the court asked counsel at the sentencing hearing if he had continued to investigate the case, including potential witnesses, defenses, "alibi" issues, etc., and counsel stated that he had spoken with both defendant and his family about possible defenses, and how they would "play out," and that he had "very, very carefully analyzed that before going forward in any way." Counsel informed the court that he had spoken with defendant's family members and possible witnesses about information they could offer and had discussed that information with defendant. Accordingly, the record belies defendant's assertion that counsel did not investigate defenses.

¶ 31    Further, defendant's allegation fails under both ineffective-assistance prongs. Where defendant confessed to the crime and, further, his alleged alibi witness (the source of the *only* affidavit attached to his postconviction petition) was his brother and codefendant, who had also confessed to the crime, counsel was not arguably objectively unreasonable for not presenting an alibi defense. "Trial strategy includes an attorney's choice of one theory of defense over another," and, where the alibi defense was inconsistent with defendant's statements to police, which were not suppressed, counsel was not arguably objectively unreasonable for instead pursuing an avenue that merely preserved defendant's ability to appeal the suppression ruling. (Internal quotation marks omitted.) *People v. Cunningham*, 376 Ill. App. 3d 298, 301-02 (2007). Further, it is not arguable that presentation of an alibi defense would have altered the outcome of these proceedings. Again, once defendant's suppression motion was denied, his confession and other evidence constituted overwhelming evidence of his guilt. An alibi defense would have been inconsistent with defendant's

videotaped statement. Finally, we note that counsel did, indeed, present a defense. Specifically, at the stipulated bench trial, the evidence included the entire record from the suppression hearing, which included counsel's extensive cross-examinations and argument. Thus, by including the evidence from the suppression hearing, counsel preserved defendant's only credible defense and repeatedly made clear that the purpose of the stipulated bench trial was to preserve defendant's suppression issue. See, *e.g.*, *People v. Horton*, 143 Ill. 2d 11, 22 (1991). The ineffective-assistance claim was properly dismissed.

¶ 32    Second, defendant's challenges to counsel's alleged failure to present opening and closing arguments at the stipulated bench trial similarly fail because those decisions fall squarely within the strategic purview of the attorney and cannot arguably be considered, particularly at a bench trial where the evidence is stipulated, to be objectively unreasonable. See *People v. Conley*, 118 Ill. App. 3d 122, 127-28 (1983) (waiver of opening and closing statements has been "recognized repeatedly as a matter of trial strategy *** particularly in a bench trial"). Moreover, counsel *did* present a closing argument, stating:

> "The only final thing I would say is that every step that has been taken in this case, the decisions that have been made have been made by my client with many reasons in mind. And I think a lot of them are obvious. And that all the decisions were made with my professional counsel, my professional opinion regarding various methods to go, and things that could be done with the trial, and that's why we are pursuing in this particular way. It has been very, very carefully thought out and discussed; and there is a reason why we are doing what we are doing today."

The trial court, in dismissing this claim, aptly summarized counsel's closing argument as a strategic method of "remind[ing] the trial court that defendant was utilizing the stipulated bench trial procedure to preserve the rulings on the motions to suppress for appellate review. In doing so, defense counsel diplomatically conveyed defendant's position that the statements should not be considered reliable or credible at trial." As defendant's claim fails under both ineffective-assistance prongs, the court properly dismissed it.

¶ 33    Third, defendant's claim that counsel improperly advised him not to testify at trial fails because it is belied by the record and defendant cannot establish deficiency or prejudice. Generally speaking, unless counsel refused to allow defendant to testify, advice not to testify constitutes trial strategy and does not support an ineffective-assistance claim. See *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 29. Here, defendant's petition alleges that he:

> "notified counsel that he wanted to testify to his alibi defense. Trial counsel directed [defendant] not to testify because the State would trick him while he was on the stand and because his appeal would go better because the appellate court would only have the witnesses['] word and not [defendant's]. Thus, [defendant], thinking trial counsel knew best, *decided not to take the stand.*
>
> *       *       *
>
> [Defendant] was going to testify to his alibi until trial counsel directed him not to due to his reasons which were baseless in law." (Emphasis added.)

Therefore, defendant's allegations reflect that counsel did not *prohibit* defendant from testifying but, rather, counsel gave strategic advice, defendant listened to that advice, and defendant chose not to testify. Given that the evidence included defendant's videotaped confession, counsel's advice that defendant not present the State an opportunity for

cross-examination and possible impeachment was well within the range of reasonable professional assistance. Further, the record reflects that both counsel and the trial court thoroughly addressed defendant's right to testify, admonishing defendant of his right to testify and confirming that defendant's decision not to testify was his own, and that the court ultimately found that defendant's waiver of his right to testify was knowing, intelligent, and voluntary. Again, defendant claims without authority that his attorney's private conversations with him trumped the on-record conversations. As discussed, however, defendant cannot establish either that it is arguable that counsel's performance was deficient or that it is arguable that, but for counsel's advice, the result of the proceeding would have been different. Accordingly, the court properly dismissed the ineffective-assistance claim.

¶ 34    Fourth, defendant argues that counsel was ineffective for failing to present mitigating evidence and failing to challenge the State's aggravating evidence at sentencing. In sum, defendant contends that counsel's broad discretion to call witnesses and present evidence does not extend to a failure to investigate or prepare any evidence at all. While this concept might be true, that is not what happened here.

¶ 35    Here, counsel presented mitigating evidence in the form of letters from defendant's father and a family friend. Defendant argues that counsel should have presented witnesses instead and that his decision not to do so, based simply on language barriers, qualifies as ineffective assistance. This oversimplifies counsel's decision. Specifically, before the sentencing hearing, counsel informed the court that he intended to present testimony in mitigation and that, while some mitigating evidence would come in by letter, he did not want to present repetitive evidence. At sentencing, however, counsel tendered as evidence in mitigation the letters and noted, although several of defendant's family members were present in court, "I believe that what has been expressed to you in those letters are the expressions of the rest of the family. I can represent that as an officer of the court." Counsel noted that language barriers would make it very difficult for the witnesses to communicate. The court offered the assistance of an interpreter, but counsel explained that "it's very emotionally charged for everybody. I spoke with the family members. They are here for support. I think their presence here communicates as well as they could verbally. I don't think you're going to find a situation where a family member would have anything but wonderful things to say about their family." While this was not evidence, counsel provided lengthy argument to support mitigation in sentencing. We further note that defendant does not attach any affidavits to his petition to demonstrate what mitigating witnesses might have said that would not have been merely cumulative of the sentiments expressed by the letters presented to the court. Therefore, contrary to defendant's assertion, the record reflects that counsel did not fail to investigate or present mitigating evidence. His strategy to present the letters as representative of the position and sentiment of all of defendant's witnesses was not arguably objectively unreasonable, and the record does not reflect that, had the witnesses testified, their testimony would not have been merely cumulative or would arguably have resulted in a different sentence.

¶ 36    As to counsel's failure to object to the State's "incorrect" aggravating evidence, defendant apparently means the State's mention of the information in the presentencing report that defendant committed a "beat-down" of a rival gang member while incarcerated and that he "has been sent to the administrative segregation unit four separate times for various activities" (including as punishment for the "beat-down"). When announcing its

sentence, the court mentioned the incident, noting that defendant participated "in a fight in jail because a gang put a hit on somebody." Defendant contends, however, that he immediately informed counsel that the "beat-down" evidence was erroneous because he was cleared of that charge after a hearing by a jail committee. Nevertheless, counsel did not object to the incorrect information.

¶ 37    Counsel's decision not to object during the State's sentencing argument constitutes a strategic decision. See *People v. Probst*, 344 Ill. App. 3d 378, 387 (2003) (a failure to object is a matter of trial strategy). However, even if we were to consider the decision arguably objectively unreasonable, defendant still cannot establish that it is arguable that, if counsel *had* objected that *one* of defendant's *four* trips to segregation was ultimately deemed unwarranted, the court would have imposed a different sentence. The court properly dismissed defendant's ineffective-assistance claim.

¶ 38    Finally, defendant asserts that counsel's errors cumulatively deprived him of effective representation. This claim fails because defendant has not identified any error and, where there is no individual error, there cannot be cumulative error. See *People v. Garmon*, 394 Ill. App. 3d 977, 991 (2009).

¶ 39                    C. Ineffective Assistance of Appellate Counsel

¶ 40    Defendant also alleges in his petition that he received ineffective assistance from appellate counsel, who did not raise any of the aforementioned issues on direct appeal. This claim fails. As mentioned, appellate counsel raised issues concerning the suppression of defendant's confession, the applicability of extended-term sentencing, and the imposition of a public defender fee without inquiry into defendant's ability to pay. This court affirmed in part (denial of motion to suppress and extended-term sentencing), reversed in part (public defender fee), and remanded (for inquiry into defendant's ability to pay the fee). Thus, appellate counsel's efforts on defendant's behalf were partially successful. Further, "[a]ppellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, [the] defendant has suffered no prejudice from counsel's failure to raise them on appeal." (Internal quotation marks omitted.) *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 42. Here, defendant's petition fails to raise any meritorious issues and, therefore, appellate counsel was not arguably ineffective for failing to raise the same. The petition was properly dismissed as frivolous and patently without merit.

¶ 41                                III. CONCLUSION
¶ 42    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 43    Affirmed.