2020 IL App (1st) 180615-U

No. 1-18-0615

August 31, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 14 CR 716 |
| LARRY GATES, | ) ) | Honorable Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Trial court's summary dismissal of defendant's postconviction petition is affirmed where defendant failed to establish the gist of a constitutional claim to warrant further proceedings under the Post-Conviction Hearing Act.

¶ 2    Defendant Larry Gates appeals from the summary dismissal of his *pro se* petition for post-conviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends the trial court erroneously dismissed his petition where he set forth a non-frivolous claim of a constitutional violation, namely that his trial counsel was

ineffective in preventing him from testifying in his own defense where he was "too ill to meaningfully object to counsel's unreasonable and incorrect advice." For the following reasons, we affirm.

¶ 3    Following a bench trial in 2014, defendant was found guilty of aggravated criminal sexual assault and aggravated battery and he was sentenced to seven years' imprisonment on the aggravated criminal sexual assault count.

¶ 4    On the day of trial, the trial court informed defendant of the charges against him and that he was entitled to a jury trial. The court asked him whether he knew what a jury trial was and whether he understood that by signing a jury waiver that he would be giving up his right to a jury trial. Defendant responded "yes, sir" to the court's questions.

¶ 5    At trial, T.P. testified that in late 2013, she was friends with defendant but was not dating him. On December 3, 2013, defendant told T.P. that he would bring her something to eat. but when he arrived, he did not have any food. He suggested they drive to a restaurant "right up the street" so T.P. got into the passenger seat of defendant's car. Instead of driving to the restaurant, defendant drove to his house to pick up clothes, then to "buy some weed," and later to Marquette Park, where he parked his car and smoked. All the while, T.P. "kept saying" she wanted to go home, to which defendant told her to "Just chill."

¶ 6    T.P. text messaged friends to ask them to pick her up when defendant leaned over and tried to kiss her. When T.P. moved her head away and asked defendant what he was doing, he punched her with his fist on her left temple. T.P. tried to calm him down, but defendant hit her on the right side of her head. Defendant said "[y]ou gonna turn me down," hit her again on the left side of her head, and then climbed toward her seat. T.P. attempted to open her door, but the doors were locked.

Defendant wrapped his arm around her neck and began "choking" her so that T.P. could not breathe. He pulled her toward the back seat. T.P. was kicking her foot "on the driver part of the window trying to get out." She and defendant began fighting. He punched T.P. again, causing her to feel "dizzy" and "like [she] was fittin' to die."

¶ 7     Defendant began to pull T.P.'s pants down. She tried to use her phone to call someone, but defendant threw her phone in the front seat. Defendant began kissing her, put his hand down her pants and into her vagina, pulled her pants down, and began to insert his penis inside her, attempting to have sex with her. He continued trying to force his penis inside T.P., who was fighting him. His penis touched her vagina but did not go "all the way" inside. T.P. did not feel defendant ejaculate. When T.P. told defendant she could not breathe, defendant returned to the front seat and said he would take her home. He refused to return her phone.

¶ 8     Defendant drove to a gas station where the police stopped his vehicle. Defendant was shaking and staring at T.P. A police officer approached T.P.'s window, and she had a conversation with him outside the vehicle. As a result of her altercation with defendant, T.P. received injuries including "two knots on both sides of [her] head * * * a busted lip, a chipped tooth * * * [and] scratches on [her neck]." T.P. was in pain and went to the hospital after the incident. When the police returned T.P.'s phone to her, it was "cracked and broke[n]." T.P. identified her injuries in photographs and indicated her chipped tooth "kind of grew back."

¶ 9     On cross-examination, T.P. acknowledged she previously testified at a preliminary hearing that she had known defendant for three years and she unbuttoned her pants. T.P. never told police officers that defendant went to his house to get some clothes or threw her phone to the front seat causing it to shatter.

¶ 10     Chicago police officer Jeffrey Carrero testified that on December 3, 2013, he observed a car with its rear plate light not lit and its rear passenger taillight "hanging out." When Carrero activated his lights, the vehicle pulled into a gas station. Carrero exited his vehicle and approached the driver, defendant, while a fellow officer approached the passenger side. Defendant was "leaning over the passenger, looking at [Carrerro's] partner who was standing on the passenger side speaking with the passenger." Carrero noticed defendant had a large scratch on the left side of his neck and "he appeared to be sweating and breathing heavy." Carrero identified T.P. as the passenger of the vehicle. After T.P. briefly spoke with Officer Bryant outside the vehicle, Carrero placed defendant into custody. He found T.P.'s iPhone with a cracked screen in defendant's right front pocket. At the police station, Carrero observed scratches on defendant's right arm.

¶ 11     The parties stipulated that registered nurse, Lilaine Balero, would testify she examined and spoke with T.P. in the St. Bernard Hospital emergency department on December 3, 2013. T.P. told her a male friend tried to kiss her, punched her on the side of her head, and pulled her to the back seat of the car. T.P. told her the man pulled her pants down, penetrated her vaginal area with his penis while not wearing a condom, and did not ejaculate. Balero would testify T.P. was crying, withdrawn, talking very quietly, and reported a pain level of eight on a scale of 1 to 10. An examination of T.P. showed specified abrasions and contusions to her right temple, forehead, swollen lower lip, and patella, as well as pain and tenderness to her right thumb and a thick white fluid in her vaginal fold. No external trauma, lesions, masses, or bleeding were noted in T.P.'s vaginal area.

¶ 12     The parties further stipulated that Illinois State Police forensic scientists Lisa Fallara and Ronald Tomek would testify they analyzed a sexual assault evidence kit from T.P. Fallara would

testify she found insufficient human male DNA recovered from vaginal swabs from the kit and Tomek would testify he identified no semen on the swabs. The State then rested its case in chief.

¶ 13    Officer Sean Bryant testified he was working with Carrero and two other officers on December 3, 2013, when they observed a red vehicle with a broken plate light and brake light. The officers pulled the vehicle over into a gas station, and Bryant spoke with the passenger, T.P. During that conversation, T.P. told Bryant that defendant assaulted her, punched her in the face, and attempted to rape her. Bryant did not recall T.P. telling him that defendant forced her into his car. T.P. told him that defendant broke her phone and then dragged her into the back of the vehicle where he unbuttoned his pants and inserted his fingers and penis into her vagina. On cross-examination, Bryant testified T.P. appeared "[u]pset and disheveled" when he was speaking with her.

¶ 14    Defendant rested his case in chief and the court then engaged in the following colloquy:

"THE COURT: Did you talk to Mr. Gates about testifying in this case?

[DEFENSE COUNSEL] I have, your Honor.

THE COURT: Mr. Gates, I just want to advise you that you have a right to testify in your case, you also have a right not to testify, but that's only a decision that you can make; do you understand that?

DEFENDANT: Yes, sir.

THE COURT: Is it your decision not to testify today in your case?

DEFENDANT: Yes, sir.

THE COURT: Very well."

¶ 15     In closing, defendant argued the lack of physical evidence and inconsistencies in T.P.'s testimony did not warrant a guilty verdict. The court found defendant guilty of criminal sexual assault and aggravated battery, and not guilty of kidnaping.

¶ 16     After defendant filed a motion for a new trial via his private counsel, he indicated to the court that he wanted to find a new lawyer, because his attorney "fall [*sic*] short from being a good counsel." The court granted defendant a continuance to find new counsel. After two continuances, the court appointed an assistant public defender to represent defendant for the remainder of the proceedings.

¶ 17     Appointed counsel filed a motion for a new trial, and adopted the motion filed by private counsel. The new motion argued *inter alia* that private counsel was ineffective for failing to investigate or present evidence that T.P. tested positive for gonorrhea, where defendant did not have any sexually transmitted infection. The trial court denied defendant's motions, merged the aggravated battery charge into the aggravated criminal sexual assault charge, and sentenced defendant to seven years' imprisonment.

¶ 18     On direct appeal, defendant argued the trial court improperly assessed certain fines and fees. On May 9, 2017, this court entered an order affirming his conviction and directing the clerk of the circuit court to correct the fines and fees order. *People v. Gates*, No. 1-15-0600 (2017) (unpublished summary order under Illinois Supreme Court Rule 23).

¶ 19     On November 7, 2017, defendant filed a *pro se* post-conviction petition. In his petition, defendant raised numerous claims of ineffective assistance of counsel, including that on the date of trial, he informed counsel that he was "sick" and "felt weak and dizzy" and "she than [*sic*] told [him] [he] shouldn't testify on [his] behalf and do [*sic*] to the fact [he] felt weak [he] just agreed"

¶ 20    Defendant attached medical treatment notes to his petition which indicate, on October 15, 2014, he was brought to the dispensary and "stated he swallowed another detainee['s] one pill in the tier this morning after being medicated with his court medication" and felt "dizzy, weak, and uncomfortable."

¶ 21    On February 2, 2018, the circuit court dismissed defendant's petition in a written order, finding the issues presented to be frivolous and patently without merit. In pertinent part, the court found counsel's advice that defendant should not testify at trial was a strategic decision and defendant was not prejudiced by his failure to testify.

¶ 22    On appeal, defendant argues the trial court erred in summarily dismissing his *pro se* postconviction petition because the petition stated an arguable claim that his decision not to testify was the result of trial counsel's ineffectiveness in "preventing" him from testifying in his own defense when he was too ill to meaningfully object to counsel's "unreasonable and incorrect" advice. He contends the petition alleged he wanted to testify, and that it stated an arguable claim that his trial counsel was ineffective for "refusing to allow" him to testify on his own behalf, despite his desire to do so. Defendant argues he would have testified that he did not attempt to sexually assault T.P., and merely got into a fight with her because he did not bring her any food.

¶ 23    The Act provides a three-stage method by which imprisoned persons may collaterally challenge their convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2016); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). Here, the trial court summarily dismissed defendant's petition at the first stage. At the first stage of postconviction proceedings, the trial court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West

2016); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact and, instead, is based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). An example of a meritless legal theory is one that is completely contradicted by the record. *People v. White*, 2014 IL App (1st) 130007, ¶ 18.

¶ 24    The petition need only present a limited amount of detail and need not set forth the claim in its entirety. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). However, although a *pro se* petitioner need only set forth the gist of a constitutional claim, this low threshold does not excuse the petitioner from providing any factual detail at all regarding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. " '[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated' and are objective in nature or contain some explanation as to why those facts are absent." *Hodges*, 234 Ill. 2d at 9 (quoting *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008)). In determining whether a petition presents a valid claim for relief, "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding," as well as any affidavits, records, or other evidence supporting its allegations. 725 ILCS 5/122-2.1(c) (West 2016); 725 ILCS 5/122-2 (West 2016). Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 25    To state a claim of ineffective assistance of counsel in first stage postconviction proceedings, defendant must demonstrate it is arguable that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) defendant was prejudiced by counsel's deficient performance. *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 678-88 (1984)). More

specifically, at this stage, a defendant must show that it is arguable "counsel's performance was objectively unreasonable under prevailing professional norms and there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694).

¶ 26    The decision whether to testify in one's own defense is a matter which ultimately belongs to the defendant (*People v. Thompkins*, 161 Ill. 2d 148, 177 (1994)), but is generally made after consultation with counsel (*People v. Patrick*, 233 Ill. 2d 62, 69 (2009)). Usually, advice not to testify is a matter of trial strategy that does not rise to the level of ineffective assistance of counsel, unless counsel refused to allow defendant to testify. *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 29. "When a defendant's postconviction claim that his trial counsel was ineffective for refusing to allow the defendant to testify is dismissed, the reviewing court must affirm the dismissal unless, during the defendant's trial, the defendant made a 'contemporaneous assertion * * * of his right to testify.' " *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009) (quoting *People v. Brown*, 54 Ill. 2d 21, 24 (1973)); see *People v. Knapp*, 2019 IL App (2d) 160162, ¶ 40-41 (affirming summary dismissal of a post-conviction ineffective assistance of counsel claim where defendant did not present evidence that he told his lawyer he wanted to testify despite advice to the contrary) (appeal allowed by No. 124992 (Ill. Sept. 25, 2019)).

¶ 27    We find the trial court properly summarily dismissed defendant's ineffective assistance of counsel claim premised on counsel's advice not to testify as defendant failed to set forth sufficient facts to establish a constitutional violation for purposes of the Act. The Act requires a petition must, *inter alia*, "'clearly set forth the respects in which petitioner's constitutional rights were violated.'" *Hodges*, 234 Ill. 2d at 10 (quoting 725 ILCS 5/122-2 (West 2006)). Nothing in

defendant's petition supports a conclusion that counsel *refused* to allow him to testify, as he claims on appeal. The only allegation in the petition regarding counsel's impact on defendant's decision to testify is that counsel told him he "shouldn't" testify on his own behalf and because defendant "felt weak," he "just agreed." Even reading defendant's petition and attached affidavit liberally, the petition does not allege that he wanted to testify, counsel "refused" to let him testify, or she "prevented" him from testifying.

¶ 28    Defendant's petition contains no allegation that he ever communicated to counsel that he wanted to testify. Nor does it allege he made any assertion of his right to testify at the trial. In fact, the record on appeal clearly shows defendant made no such required contemporaneous assertion to the court at the time of trial. See *Youngblood*, 389 Ill. App. 3d at 217. The record shows the trial court informed defendant of his right to testify in his defense, and that the decision to testify was one only he could make. The court then specifically asked defendant whether it was his decision not to testify, and he responded that it was. Thus, even if we read into the petition an assertion that defendant wanted to testify, it is rebutted by the record. See *White*, 2014 IL App (1st) 130007, ¶ 18 ("At this stage, the court treats allegations of fact as true so long as those allegations are not affirmatively rebutted by the record.") Because defendant's petition did not allege he told his counsel or the court he wanted to testify or that counsel refused or prevented him from testifying, and the record affirmatively shows he did not inform the court at trial that he wanted to testify when specifically given the opportunity, defendant has not stated the gist of a claim that his right to testify was violated by counsel.

¶ 29    Defendant argues that his "monosyllabic" responses to the trial court's questioning regarding his right to testify provide proof that he "lacked the energy or mental coherence on the

day of his trial to meaningfully respond to any questions posed to him and to make any voluntary or willing decisions regarding the exercise of his fundamental rights." Even taking this allegation as true, it does not support a claim that counsel denied him his right to testify. Although defendant's petition attached medical notes showing he informed a nurse on the morning of trial that he felt weak, dizzy, and uncomfortable, neither his petition nor the report of proceedings provides support for his argument on appeal that this alleged weakness affected his "mental coherence" or ability to make decisions about his right to testify as the petition states no such allegation.

¶ 30    In the petition, defendant alleged only that, because he felt weak, he acquiesced to counsel's recommendation that he should not testify. He did not allege he felt so unwell that he could not participate in the trial, understand the court's questions, or decide for himself whether to testify. Again, although a petition need only state the gist of a constitutional claim, the petitioner must provide at least some factual detail regarding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. Further, nothing about defendant's monosyllabic responses to the court's questions regarding his decision to testify show he was unable to comprehend those questions. Defendant also gave monosyllabic responses to the court's questions to him about the charges and the jury waiver, and he does not allege in his petition that he did not understand those questions either. Regardless, it is unclear the effect of defendant's weakness on his claim that his trial counsel violated his right to testify, as we have previously ruled defendant would have needed to assert such right at the time of his trial. See *Youngblood*, 389 Ill. App. 3d at 217.

¶ 31    Lastly, even if he had asserted his right to testify, defendant has not shown it is arguable he was prejudiced by counsel's advice that he should not testify because he has not shown a reasonable probability the result of his trial would have been different had he testified. Nowhere

in his petition or affidavit does defendant set forth what his testimony would have been had he testified. See *Hodges*, 234 Ill. 2d at 10 (petitioner must provide at least some factual detail regarding the alleged constitutional violation). Even if it can be inferred that defendant would have rebutted T.P.'s sexual assault claim by testifying that they got into a physical altercation after he did not bring her food and that he did not assault her, his defense already focused upon pointing out inconsistencies in T.P.'s story and attacking her credibility. Further, the other evidence before the court, including officer testimony and stipulations, as well as the defendant's own witness, all corroborate T.P.'s version of events. Even if defendant were to testify on his behalf, it is doubtful his testimony would have affected the outcome of the trial. Accordingly, defendant has not shown he was prejudiced by his counsel's advice that he should not testify at trial.

¶ 32    For the foregoing reasons, we affirm the trial court's summary dismissal of defendant's post-conviction petition.

¶ 33    Affirmed.