2021 IL App (1st) 182636-U

No. 1-18-2636

Order filed March 19, 2021

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 08412 |
| | ) | |
| WALTER CAMPBELL, | ) | Honorable |
| | ) | Thomas V. Gainer, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We reverse the second-stage dismissal of defendant's successive postconviction petition. He is entitled to a third-stage evidentiary hearing on his actual innocence claim, to the extent it is supported by two of the affidavits submitted. Defendant has also made a substantial showing on his claim of ineffective assistance of counsel, to the extent he alleges he did not testify based on trial counsel's erroneous advice that he could be impeached with a pending charge.

¶ 2    Defendant Walter Campbell appeals the second-stage dismissal of his successive petition

filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)),

arguing that he is entitled to a third-stage evidentiary hearing with respect to (1) his actual innocence claim and (2) his ineffective assistance of trial counsel claim. For the following reasons, we reverse and remand for third-stage proceedings with respect to (1) his actual innocence claim and (2) his claim of ineffective assistance of counsel, to the extent he alleges he did not testify due to counsel's erroneous advice that he could be impeached with a pending charge.

¶ 3       Following a 2010 jury trial, defendant was found guilty of one count of first degree murder and two counts of attempted first degree murder and was sentenced to 50 years' imprisonment for first degree murder and two concurrent 28-year terms for attempted first degree murder to be served consecutively to the murder sentence.[1] We affirmed on direct appeal. *People v. Campbell,* 2012 IL App (1st) 101249. Because we set forth the facts in detail on direct appeal, we recount them here to the extent necessary to resolve the issues raised.

¶ 4       Defendant was charged with the first degree murder of Chadwick Jamison and the attempted first degree murder of Christopher Roundtree and Robert Walton. The State's case was largely premised upon Roundtree and Walton's eyewitness testimony, which is summarized herein but set forth in detail in our opinion on direct appeal.

¶ 5       Roundtree testified that he was a member of the Black P. Stones street gang. On March 4, 2005, he was riding with Jamison, Walton, and Charles Gill in Jamison's vehicle. Shortly before 10 p.m., they went to a gas station in Black P. Stones gang territory. There, Roundtree saw defendant and Victor Perry, whom he believed were members of the Gangster Disciples street gang. Jamison approached defendant and asked him "what the f*** y'all doing up here," and

---

[1] Codefendant Victor Perry was tried simultaneously with defendant, although Perry waived his right to a jury trial. The trial court acquitted Perry of all charges.

defendant responded Jamison should leave before he got himself killed. After other Black P. Stones gang members arrived, defendant and Perry drove away from the gas station.

¶ 6     Jamison then drove Roundtree, Walton and Gill to an alley near Roundtree's house. Roundtree saw Perry's vehicle and heard gunfire coming from that direction. Gunshots broke the back window of Jamison's vehicle, and Jamison drove away with Roundtree and Walton. Soon afterwards, defendant and Perry began following them in defendant's vehicle. Jamison crashed his car as he was being pursued by defendant.

¶ 7     After Jamison's car crashed, defendant left his vehicle and ran toward Jamison's car, shooting into the rear window and driver's side window. Roundtree could see defendant's face clearly. Walton fled Jamison's car and defendant fired at Walton, before firing more shots into Jamison's car. As Roundtree exited Jamison's vehicle, he was grazed by a bullet. Roundtree felt Jamison's body drop and then saw his body hanging out the back of the car. Roundtree spoke to police shortly thereafter. The following day, Roundtree identified defendant in a photo array and a physical lineup.

¶ 8     Walton's testimony was similar to that of Roundtree. Walton was with Jamison, Roundtree, and Gill at a gas station when they saw defendant and Perry, who were members of the Gangster Disciples. Jamison told defendant and Perry that they should not be there. Defendant and Perry left after additional members of the Black P. Stones arrived. As defendant drove away, he hit Jamison's car and said he would "kill all of you." Walton described seeing Perry's car near Roundtree's house. Walton heard gunfire that broke the back window of Jamison's car. Jamison's vehicle was later pursued by defendant's car, until Jamison crashed into a pole. Walton saw defendant exit his vehicle and run toward Jamison's car, firing several shots. Walton jumped out

of Jamison's car and ran away. Walton subsequently told police that defendant was the shooter and identified defendant in a set of photographs.

¶ 9     The defense did not call any witnesses. On the record, the court informed defendant that it was his choice whether to testify: "It's a decision you can make in conjunction with your lawyer. It's a decision which you can consult with your lawyer on, but ultimately the decision is yours." Defendant indicated that he understood and that he elected not to testify. When the court asked defendant if he made that decision of his own free will and "[a]fter considering the advice of your lawyer," defendant answered affirmatively.

¶ 10    The jury found defendant guilty of one count of first degree murder and two counts of attempted first degree murder. He was sentenced to 50 years' imprisonment for first degree murder and two concurrent 28-year terms for attempted first degree murder to be served consecutively to his murder sentence.

¶ 11    On direct appeal, defendant argued, *inter alia*, he was denied a fair trial where the trial court admitted evidence that he was a gang member; the court failed to advise the jury of the limited purpose for which gang evidence should be considered; and trial counsel was ineffective in failing to request a limiting instruction regarding gang evidence. *Campbell*, 2012 IL App (1st) 101249. This court affirmed defendant's conviction on direct appeal.

¶ 12    Through counsel, defendant filed his initial postconviction petition on September 25, 2013. In that petition, he alleged, *inter alia*, that trial counsel was ineffective for "not adequately investigat[ing] his case to determine that [defendant] was not a member of a street gang." The circuit court summarily dismissed defendant's petition, and we affirmed the dismissal in an order dated February 2, 2016. *People v. Campbell*, 2016 IL App (1st) 140359-U.

¶ 13    On August 14, 2014, defendant filed a *pro se* motion for leave to file a successive petition for postconviction relief under the Act, accompanied by a successive petition and a number of exhibits. The successive petition includes a claim of actual innocence based on "newly discovered evidence." Specifically, defendant asserted that the supporting affidavits of LeCorrie Kenerson, Kerry Williams, and Lemar Holmes "establishe[d] that he was not the gunman, nor was his vehicle on the scene of the crime."

¶ 14    Kenerson's affidavit indicates that, on the night of March 4, 2005, he saw Jamison's car crash after striking a lightpole. A gray car then stopped, out of which emerged a "light skinned man" with his hair in a ponytail, who began shooting at Jamison's car. Kenerson was "about 15-20 feet from the shooter." Kenerson saw a "dark skinned guy" get out of Jamison's car "pointing what appeared to be a gun in the lightskinned guy's direction." Kenerson ducked, heard more shots, and looked up to see the gray car driving away. The next day he learned that Jamison was dead. Kenerson stated that he knew what defendant looked like, and that he was positive that defendant was not the person who shot at Jamison's car. Kenerson stated that he did not come forward sooner because he knew there was a "gang war going on" and he was afraid to get involved.

¶ 15    In his affidavit, Kerry Williams testified that he and his girlfriend were sitting in Williams' car when they heard a crashing sound behind them, turned, and saw a crashed white car. Williams' friend exclaimed "That's Chad!," referring to Jamison. A gray car then pulled up, and a man with a ponytail emerged and started shooting at Jamison's car. Williams drove away after hearing several shots. Williams further stated that he met defendant in prison in 2013, and later learned that defendant was imprisoned for killing Jamison. Williams eventually asked defendant if he had

long hair in 2005. Defendant answered negatively. Williams then told defendant that he had witnessed the shooting. In his affidavit, Williams stated that he is positive that defendant was not the man he saw shooting at Jamison's car.

¶ 16    Lemar Holmes' affidavit relates that on the night of March 4, 2005, Jamison called him and said he had been in an argument with "Walter" at a gas station. Later that night Holmes called Jamison, who told him that "his back window got shot out."  Holmes told Jamison to pick him up, and Jamison agreed. According to Holmes:

> "After 10 minutes, I got impatient so I went over to the gas station. I saw Chris on Marquette and heard sirens around about the same time. Chris looked shocked; he had blood on his coat. He said that Chad [Jamison] had been shot. Robert Walton (Dino) was in front of his house. I asked them both who shot Chad, they said they didn't know the guy; he was in a gray car but somebody had to pay for it and since they were mad about getting into it with Walt they gave his name. At the time I went along with it because I was mad about my best friend getting murdered. Chris and Robert were supposed to tell the truth but they never did [and] now an innocent man is locked up because he was disliked."

¶ 17    In addition to the actual innocence claim, the successive petition included claims of ineffective assistance of trial counsel.[2] Among other allegations, defendant asserted that trial counsel's "misapprehension of the law caused petitioner to waive his right to testify in his own defense." Specifically, defendant alleged that before trial, he had a separate pending first degree

---

[2] The successive petition also alleged that trial counsel was ineffective in failing to interview and call certain individuals as witnesses and failing to "fully consult with" defendant, but those allegations are not relevant to defendant's contentions on appeal.

murder charge, and that his trial counsel (Fred Cohn) advised him that if he testified, the State could "use the pending charge against him." Defendant also alleged that trial counsel told him that "if he chose not to testify, the State would not be allowed to bring out [defendant's] purported gang ties." Defendant further alleged that during trial, he expressed his wish to testify in order to dispute Roundtree and Walton's testimony that he was in a gang; according to the petition, Cohn told him "the jury would never believe he was not in a gang." Defendant alleged that Cohn's advice was erroneous because "the pending charges could not be used to impeach his credibility and the jury was free to believe his testimony that he was not in a gang." Defendant alleged that, without such advice, he would have testified that "he had nothing to do with the shooting" and that he was not in a gang. Defendant submitted a supporting affidavit in which he states, in relevant part:

> "When Fred Cohn and I discussed whether I should testify, I told him I wanted to get on the stand to tell the jury that I was not in a gang nor have I ever been in a gang. I also wanted to tell the jury that I was not involved in the shooting whatsoever. Fred Cohn then told me the jury wouldn't believe me if I said I wasn't in a gang because of the area of Chicago I was living in. Cohn also said that if I was to get on the stand, the State could use the murder I had pending against me to impeach my testimony. For that reason I chose not to testify."

¶ 18　Defendant's *pro se* motion for leave to file a successive petition argued that there was "cause" for his failure to include this claim of ineffective assistance in his initial postconviction petition. Specifically, he asserted that he hired an attorney (Michael Finn) to represent him in his initial postconviction petition "with the mutual understanding that the instant claim of ineffective assistance of counsel would be raised," but that Finn filed the petition without that claim, and

without defendant's knowledge or consent. Defendant asserted that he did not know the contents of the petition until he received a notification that it had been dismissed. He argued that the "mishandling of petitioner's first petition by counsel" is "an objective factor" beyond his control that prevented him from raising this claim in the initial proceeding.

¶ 19    A "criminal disposition sheet" in the record reflects that, on September 29, 2014, the successive petition was "docketed" and postconviction counsel was appointed to represent defendant. That document does not explicitly mention the motion for leave to file the successive petition. The record on appeal does not contain a transcript of proceedings from that date.

¶ 20    On January 14, 2016, postconviction counsel filed a Rule 651(c) certificate, as well as a supplemental petition elaborating on defendant's claim that he was denied effective assistance of counsel. In the supplemental petition, defendant alleged that (1) he chose not to testify because trial counsel erroneously advised him that he would be impeached by a pending murder charge; (2) due to the erroneous advice, the testimony of Walton and Roundtree was unrebutted; and (3) defendant's testimony "could have affected the jury and changed the outcome of trial."

¶ 21    On November 16, 2017, the State filed a motion to dismiss the successive petition and supplemental petition. The court heard argument on August 22, 2018. The circuit court granted the State's motion to dismiss on November 27, 2018. At that time, the court remarked that the affidavits of Kenerson, William and Holmes are "insufficient to meet the standard set forth in *People v. Edwards* [2012 IL 111711], so the claim of actual innocence fails." The court also found that the defendant's claims of ineffective assistance of counsel "failed to meet either prong of the *Strickland* standard."

¶ 22    Defendant's counsel filed a notice of appeal on November 27, 2018. On December 14, 2018, defendant filed a *pro se* "motion for rehearing" that stated, in its entirety: "I would like the court to reconsider the State's motion to dismiss, and appointment of counsel on appeal for indigent defendant." On February 5, 2019, the court entered an order denying the motion to reconsider. On April 30, 2020, our supreme court issued a supervisory order directing us to treat the November 27, 2018 notice of appeal "as a properly perfected appeal from the circuit court's November 27, 2018 judgment dismissing movant's post-conviction petition and the circuit court's February 5, 2019 judgment denying movant's motion to reconsider."

¶ 23    On appeal, defendant asserts that the trial court erred in granting the State's motion to dismiss the successive petition without an evidentiary hearing, with respect to both (1) his actual innocence claim and (2) his claim that ineffective assistance of counsel led him not to testify at trial. First, he contends he made a substantial showing of actual innocence through the affidavits of Kenerson, Williams, and Holmes. Secondly, he contends he made a substantial showing that trial counsel's ineffectiveness. Thus, he requests that we remand for an evidentiary hearing on these issues.

¶ 24    The Act "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. [Citations.]" *People v. Tate*, 2012 IL 112214, ¶ 8. In a noncapital case, a postconviction proceeding contains three stages. *Id.* ¶ 9. At the first stage, the circuit court independently reviews the petition to determine whether it is frivolous or is patently without merit. *Id*. If the petition is not summarily dismissed, it "advances to the second stage, where counsel may be appointed to an indigent defendant [citation] and where the

State, as respondent, enters the litigation." *Id.* ¶ 10. At the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." (Internal quotation marks omitted.) *Id.* If no such showing is made, the petition is dismissed. *Id.* "If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. [Citations.]" *Id.*

¶ 25    We recognize that, in this case, the petition at issue was a successive petition. The Act "contemplates the filing of only one petition without leave of court [citation] and any claim not presented in an original or amended petition is waived. [Citation.]" *Sanders,* 2016 IL 118123, ¶ 24. However, our supreme court "has identified two bases upon which the bar against successive petitions will be relaxed. The first is when the petitioner satisfies the cause and prejudice test." *Id.* (citing 725 ILCS 5/122-f (West 2014); *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The second exception is the "fundamental miscarriage of justice exception" which "requires the petitioner to demonstrate actual innocence." *Sanders,* 2016 IL 118123, ¶ 24. A claim of actual innocence in a successive petition need not meet the cause-and-prejudice test. *People v. Ortiz,* 235 Ill. 2d 319, 330-31 (2009).

¶ 26    We note that the record does not reflect an explicit ruling granting defendant's motion for leave to file a successive petition, before the court docketed the successive petition for second stage proceedings. However, our supreme court has indicated this does not bar advancement of a successive petition to second-stage proceedings. *Sanders*, 2016 IL 118123, ¶¶ 25-27 (explaining that although it was unclear whether the trial court "was aware that the petition before it was a successive petition" before docketing it for second-stage proceedings, "[w]hatever the trial court

believed * * * it did in fact set the petition over to the second stage, and we have held that even when no request for leave to file a successive petition is made, the trial court may nonetheless rule on the petition * * * *." *Id.* ¶ 27 (citing *People v. Tidwell*, 236 Ill. 2d 150, 152 (2010)).

¶ 27    Thus, we proceed to review the second-stage dismissal of defendant's successive petition, keeping in mind that "[t]he standards at the second stage of postconviction proceedings are the same for successive petitions" as initial petitions. *Sanders*, 2016 IL 118123, ¶ 37. As our supreme court instructs:

> "The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act. Since there are no factual issues at the dismissal stage of the proceedings, the question is essentially a legal one, which requires the reviewing court to make its own independent assessment of the allegations of the petition and supporting documentation." *Id.* ¶ 31 (citing *People v. Coleman,* 183 Ill. 2d 366, 388-89 (1998)).

¶ 28    "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. [Citations.] In deciding the legal sufficiency of a postconviction petition, the court is precluded from making factual and credibility determinations." *Robinson*, 2020 IL 123849, ¶ 45; *Sanders*, 2016 IL 1181123, ¶ 42 ("[C]redibility is not an issue at the second stage of postconviction proceedings.").

¶ 29 We first assess whether defendant's actual innocence claim should have been advanced to third-stage proceedings, that is, whether he made "a substantial showing of actual innocence such that an evidentiary hearing is warranted." *Sanders*, 2016 IL 118123, ¶ 37. "[T]o advance to the third stage of postconviction proceedings based upon a claim of actual innocence, a petitioner must show that evidence is newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial." *Id.*, ¶ 46 (citing *Ortiz*, 235 Ill. 2d at 333). Defendant urges that three separate affidavits (those of Kenerson, Williams, and Holmes) meet these requirements.

¶ 30 Notably, the State concedes that, with respect to the Kenerson affidavit, defendant should be granted a third-stage evidentiary hearing on his actual innocence claim. The State does not discuss the Williams or Holmes affidavits. For the reasons below, we conclude that a third-stage evidentiary hearing should proceed with respect to both the Kenerson and Williams affidavits.

¶ 31 Our precedent indicates that where a petitioner has submitted multiple affidavits in support of a claim of actual innocence, we first assess which of the affidavits is "procedurally sufficient to be considered under the Act at the second-stage, *i.e.*, which ones are newly discovered, material and noncumulative." *People v. Velasco,* 2018 IL App (1st) 161683, ¶ 94. We then consider whether the procedurally sufficient affidavits, taken together, are of such conclusive character to warrant third-stage evidentiary hearing. *Id.* ¶¶ 107-120 (discussing which of several submitted affidavits were new, material and noncumulative and, after concluding that four affidavits met those elements, considering them together in deciding whether defendant made a substantial showing of actual innocence).

¶ 32    We first consider whether each of the three affidavits submitted in support of the petition is newly discovered, material and noncumulative. *Id.* ¶ 94. Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47 (citing *People v. Coleman*, 2013 IL 113307, ¶ 96). Evidence is material if it is "relevant and probative of the petitioner's innocence," and "[n]oncumulative evidence adds to the information that the fact finder heard at trial." *Id.* The State concedes that Kenerson's affidavit meets these requirements, but the State makes no argument regarding the Williams or Holmes affidavits. We consider each affidavit in turn.

¶ 33    We first agree that Kenerson's affidavit is newly discovered, material and noncumulative. Kenerson's affidavit, dated February 21, 2014, reflects that it is "newly discovered," insofar as Kenerson avers (1) that he was afraid to "come forward sooner" as a witness to the shooting because he was afraid of getting involved in a gang dispute, and (2) he indicates he "never knew [defendant] was in prison" for Jamison's murder until he was told by a friend. The substance of Kenerson's affidavit is clearly material and not cumulative of the trial evidence. See *People v. Coleman*, 2013 IL 113307, ¶ 103 (witnesses' testimony that they were present for or involved in attack but that defendant was not involved, was "material and noncumulative" where it was "probative of the defendant's innocence" and was not before the jury at trial). In this case, whereas the only two eyewitnesses at trial identified defendant as the shooter, Kenerson claims the shooter was not defendant but a "light skinned" man with his hair in a ponytail.

¶ 34    We reach the same conclusion with respect to Williams' affidavit. We first conclude that, taking its allegations as true, Williams' affidavit (dated March 3, 2014) is "newly discovered." Williams states that it was not until February 2013 that he met defendant in the Stateville

Correctional Center and learned that defendant was incarcerated for Jamison's murder. Taking these allegations as true, they indicate that Williams' eyewitness account was not available at the time of trial. Further, for the same reasons discussed with respect to Kenerson's affidavit, Williams' statements are material to the central issue of the shooter's identity and not cumulative of the trial evidence.

¶ 35    We reach a different conclusion with respect to Holmes' affidavit, which is vague and lacking in detail. We cannot conclude that it constitutes "new" evidence, *i.e.*, that it was "discovered after trial and could not have been discovered earlier through the exercise of due diligence." *Coleman*, 2013 IL 113307, ¶ 96. First, Holmes' affidavit is undated, such that we cannot tell when defendant obtained it. Moreover, the affidavit does not state when Holmes decided to come forward with his information. Holmes indicates that he knew that defendant was wrongfully implicated by Roundtree and Walton and states: "At the time I went along with it because I was mad about my best friend getting murdered. Chris and Robert were supposed to tell the truth but they never did [and] now an innocent man is locked up * * *." However, Holmes sheds no light as to when or how he came into contact with defendant to provide the information set forth in the affidavit. Holmes does not offer any reason suggesting that he could not have come forward earlier, or that defendant could not have obtained the affidavit earlier. Without more, the affidavit is insufficient to establish that it could not have been discovered earlier through the exercise of due diligence. In turn, we conclude the Holmes affidavit is not "newly discovered" evidence that can be considered in support of defendant's claim of actual innocence.[3]

---

[3] As it was not newly discovered and thus inadmissible, we need not additionally discuss whether Holmes' affidavit was material or noncumulative of the trial evidence.

¶ 36 Having determined that only two of the three affidavits were admissible at the second stage, we now discuss whether that evidence, taken together, made a substantial showing of actual innocence to advance that claim to third-stage postconviction proceedings. That is, we consider whether the evidence in the Kenerson and Williams affidavits was "of such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47 (citing *Edwards*, 2012 IL 111711, ¶ 32). Given our supreme court's recent discussion of the "conclusive character" element in *Robinson*, we find that it does.

¶ 37 "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Robinson,* 2020 IL 123849, ¶ 47 (citing *People v. Washington*, 171 Ill. 2d 475, 489 (1996)). The "conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* (citing *Coleman,* 2013 IL 11307, ¶ 96. Our supreme court in *Robinson* elaborated on the meaning of the "conclusive character" element:

> "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. [Citation.]" *Id.* ¶ 48.

Thus, *Robinson* emphasized that "the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.]" *Id.* ¶ 49.

¶ 38    We conclude that the Kenerson and Williams affidavits meet the conclusive character element. Both Kenerson and Williams present eyewitness testimony that directly conflicts with the State's witnesses, Roundtree and Walton, regarding the identity of the shooter. Both Kenerson and Williams maintain that Jamison was shot by a man with a ponytail, who was not defendant. Such evidence could potentially undermine Roundtree and Walton's credibility in the eyes of the fact finder, and thus places the trial evidence in a different light. See *id.*, ¶ 76 (explaining that an affidavit that "provides evidence that a different party is guilty * * * is of such a conclusive character as to lead to a different result on retrial."). We thus conclude that defendant is entitled to a third-stage evidentiary hearing with respect to his actual innocence claim, insofar as it was supported by the affidavits of Kenerson and Williams.

¶ 39    We next turn to defendant's separate contention on appeal, in which he challenges the second-stage dismissal of his petition with respect to his ineffective assistance of counsel claim and requests an evidentiary hearing on that issue. He contends that he made a substantial showing that his trial counsel gave him erroneous advice that caused him not to testify, insofar as counsel advised him that: (1) evidence of defendant's gang ties would not be elicited if he did not testify, and (2) that if he testified, he could be impeached with a pending murder charge. Defendant claims that, based on this advice, he chose to waive his right to testify, leaving unrebutted Roundtree and Walton's testimony identifying him as the shooter. He argues that counsel's erroneous advice

constitutes deficient performance and that he was prejudiced because there is a reasonable probability that, had he testified, the result of his trial would have been different.

¶ 40    In response, the State initially argues that we may affirm the dismissal of the ineffective assistance claim on two procedural grounds not relied upon by the circuit court, stemming from the fact that this was a successive postconviction petition. First, the State contends that defendant "forfeited his erroneous-legal-advice ineffectiveness claim" by not raising it in his initial petition. Second, the State claims that defendant failed to satisfy the cause-and-prejudice test applicable when a defendant seeks leave to file a successive petition.

¶ 41    The Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). Although "only one postconviction proceeding is contemplated under the Act," the bar against successive proceedings is relaxed "when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Edwards*, 2012 IL 111711, ¶ 22 (quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause-and-prejudice exception to waiver was codified in section 122-1(f) of the Act, which provides:

> "Only one petition may be filed by a petitioner under this Article without leave of court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or

her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). Thus, although State frames waiver and cause-and-prejudice as "two" procedural issues, the State essentially asserts a single procedural argument: that defendant did not meet the Act's cause-and-prejudice test to avoid the effect of waiver, so as to permit him to assert this ineffective assistance claim in a successive petition.

¶ 42    In his reply, defendant acknowledges that his initial petition, filed in 2013, did not contain this ineffective assistance of counsel claim–*i.e.,* that he did not testify due to counsel's erroneous advice. However, he suggests that it would be inappropriate for us to review whether he showed cause and prejudice to permit this claim in his successive petition, since: "By allowing the filing, the court below already resolved the issue of forfeiture." He urges that, by advancing the successive petition to second-stage proceedings, the trial court "implicitly" found that he made "an adequate showing of cause and prejudice." He argues that he "is not required to satisfy the cause and prejudice test multiple times, at multiple stages." He otherwise responds that, if we proceed to consider the question, he did meet the cause-and-prejudice test.

¶ 43    We recognize that the record does not contain any explicit discussion of cause and prejudice by the trial court when it advanced the successive petition to second-stage proceedings. However, our supreme court precedent indicates that, in advancing the successive petition to the second stage, the trial court necessarily found that defendant satisfied the cause-and-prejudice standard. See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010) (recognizing that "a successive postconviction petition is not considered 'filed' * * * and further proceedings will not follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-

prejudice test."); see also *Sanders*, 2016 IL 118123, ¶ 25 (recognizing that "the trial court may rule on a successive postconviction petition where leave to file has not been sought when documents submitted by petitioner supply an adequate basis to determine whether the petition has sufficiently alleged cause and prejudice" (citing *Tidwell*, 236 Ill. 2d at 152)). Thus, the record reflects that the trial court found cause and prejudice with respect to the ineffective assistance of counsel claim, granted the motion for leave to file the successive petition, and advanced the successive petition to second-stage proceedings before the State moved to dismiss.[4]

¶ 44    Although we agree with defendant that the trial court necessarily found cause and prejudice to advance his ineffective assistance claim to second-stage proceedings, we disagree with his suggestion that our court is precluded from reviewing that determination. Notably, our supreme court has indicated that the question of cause and prejudice remains applicable through all three stages of a successive petition, and that the lack of cause or prejudice can support second-stage dismissal:

> "If the court determines that cause and prejudice have been adequately alleged and allows the petition to be filed, it advances to the three-stage process for evaluating postconviction petitions. During this process, the State would have an opportunity to seek dismissal of the petition on any grounds, *including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition*." (Emphasis added.) *People v. Bailey*, 2017 IL 121450, ¶ 26.

---

[4] We note that, in its motion to dismiss the successive petition and at oral argument on that motion, the State did not seek dismissal on the basis that defendant had not satisfied the cause-and-prejudice test.

Thus, we may review cause and prejudice on appeal from a second-stage dismissal. See *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 37 ("Because the State can seek dismissal based on a defendant's failure to establish cause and prejudice at any stage in the post-conviction process, as the State did here at the second stage, even though the trial court advanced the petition to the second stage and made no cause and prejudice findings, we will review whether defendant established cause and prejudice * * *.").

¶ 45    Moreover, although the State did not make any cause-and-prejudice argument in its motion to dismiss, and the record does not reflect explicit discussion of cause and prejudice by the trial court, we may affirm a second-stage dismissal "on any grounds substantiated by the record, regardless of the trial court's reasoning." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17 (citing *People v. Demitro*, 406 Ill. App. 3d 954, 956 (2010)).

¶ 46    That said, we turn to consider whether defendant demonstrated "cause" and "prejudice" as defined by the Act. We conclude that he did. First, to establish cause, "the defendant must show some objective factor external to the defense that impeded his ability to raise the claim in the initial postconviction proceeding." *People v. Holman*, 2017 IL 120655, ¶ 26; 725 ILCS 5/122-1(f) (West 2016). Defendant has alleged cause for why this particular ineffective assistance claim was not included in his initial petition. In his motion for leave to file the successive petition and supporting affidavit, defendant specifically asserted that he hired an attorney to represent him in his initial postconviction petition "with the mutual understanding that the instant claim of ineffective assistance of counsel would be raised" but that the attorney filed the petition without including that claim. Defendant also alleged that he did not know the initial petition was filed until he

received a dismissal order, and that he did not see a copy of the filed petition until two months after its dismissal, when the time for filing a motion to reconsider had already elapsed.

¶ 47    We also find that defendant has established prejudice. Under the Act, "a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." ILCS 5/122-1(f) (West 2016); see also *People v. Smith*, 2014 IL 115946, ¶ 37 (to establish prejudice, "defendant must show that the claim not raised in his initial postconviction petition 'so infected the entire trial that the resulting conviction or sentence violates due process' " (quoting *Pitsonbarger*, 205 Ill. 2d at 464)). We have previously found prejudice where a successive petition's ineffective assistance of counsel claim was premised on trial counsel's failure to introduce exculpatory evidence. See *Johnson,* 2019 IL App (1st) 153204, ¶ 41 (finding that defendant established prejudice through claim that counsel was ineffective in failing to call trial witness who would have testified that defendant was not the shooter, contradicting the State's eyewitnesses). This case is analogous to the circumstances in *Johnson*. Here, defendant claims that, but for counsel's erroneous advice, he would have testified and denied his involvement in the shooting, contradicting the State's eyewitnesses. In sum, we find that defendant showed both cause and prejudice to bring this claim in the successive petition, and thus we reject the State's invitation to affirm dismissal on that basis.

¶ 48    Having determined that defendant satisfied the cause-and-prejudice test to assert this ineffectiveness claim in the successive petition, we proceed to review whether second-stage dismissal was properly granted with respect to that claim. That is, we assess whether defendant satisfied his burden to make a substantial showing of a constitutional violation, which is a "measure

of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35. We keep in mind that "[u]nless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation." *Id*.

¶ 49    Every defendant has a constitutional right to effective assistance of counsel, and "claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Domagala*, 2013 IL 113688, ¶ 36. Under that two-prong standard:

> "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. [Citation.] More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" *Id.* ¶ 36.

¶ 50    We first assess whether, taking the allegations in the successive petition as true, defendant made a substantial showing with respect to the deficient performance prong. *Id.* ¶ 42. Defendant alleged two ways in which counsel's advice caused him not to testify at trial. In relevant part, the successive petition alleges:

> "[A]t the time petitioner was preparing for trial, there was a 1st Degree murder charge pending against him * * * other than that which he was on trial for. During discussions with petitioner's lawyer, Fred Cohn, * * * Cohn advised him that should

petitioner take the stand, the State would be allowed to use the pending charge against him[.] Prior to trial, Cohn also told petitioner that if he chose not to testify, the State would not be allowed to bring out petitioner's purported gang ties.

Once the trial was underway, petitioner saw that the State elicited from its witnesses, Christopher Roundtree and Robert Walton[,] that petitioner was in a gang, petitioner then told counsel he wished to testify to dispel the false testimony that he was in a gang. Counsel then told petitioner that the jury would never believe he was not in a gang.

Petitioner maintains that the advice counsel gave to him was erroneous in that the pending charges could not be used to impeach his credibility and the jury was free to believe his testimony that he was not in a gang."

The supplemental petition filed by defendant's postconviction counsel reiterated the claim that counsel's advice was erroneous, insofar as defendant "could not be impeached by a pending charge."

¶ 51    Defendant thus pleaded two distinct ways in which he received erroneous advice that led to his decision not to testify. We find that only one warrants an evidentiary hearing. As explained below, we conclude that defendant did not plead a substantial showing of ineffective assistance of counsel, based on counsel's alleged advice that he should not testify because the jury "would never believe he was not in a gang." However, he pled a substantial showing of ineffective assistance, to the extent he alleges that counsel erroneously advised him that he could be impeached with a pending charge.

¶ 52    "The ultimate decision whether to testify belongs to defendant." *People v. Davis*, 373 Ill. App. 3d 351, 361 (2007). "It is generally recognized that a defendant's prerogative to testify is a fundamental right, which only the defendant may waive; whether to exercise that right is not one of those matters which is considered a strategic or tactical decision best left to trial counsel. [Citations.] However, the decision whether to take the stand and testify should be made with the advice of counsel. [Citation.]" *People v. Smith*, 326 Ill. App. 3d 831, 845 (2001).

¶ 53    "As a general rule, advice not to testify is a matter of trial strategy that does not amount to ineffective assistance of counsel unless counsel refused to allow the defendant to testify." *People v. Coleman*, 2011 IL App (1st) 091005, ¶ 29 (citing *People v. Youngblood*, 389 Ill. App. 3d 209, 215 (2009)). Despite the general rule, our precedent indicates that an ineffective assistance of counsel claim may be based upon allegations that erroneous legal advice caused a defendant to choose not to testify. See *Smith*, 326 Ill. App. 3d 831, 845-46 (2001) (reversing first-stage dismissal of postconviction petition where defendant alleged he elected not to testify based on trial counsel's erroneous advice that "defendant's gang involvement would not come out if defendant did not testify"); *People v. Seaberg*, 262 Ill. App. 3d 79, 82-3 (1994) (reversing summary dismissal of ineffective assistance claim that defendant would have testified but for his attorney's erroneous advice that he would be subject to impeachment with evidence of defendant's prior misdemeanor battery conviction); see also *People v. Lester*, 261 Ill. App. 3d 1075, 1079-80 (1994)) (in reversing order granting State's motion to dismiss postconviction petition, stating "the petitioner's claim that he told his attorney he wanted to testify in his own behalf but was rebuffed based on the attorney's belief that his appeal would suffer raises a substantial constitutional issue for which an evidentiary hearing is appropriate").

¶ 54    In this case, defendant alleged that he chose not to testify, in reliance on legal advice that was erroneous in two separate respects: (1) that if he did not testify, then evidence of his gang involvement would not be introduced and (2) that if he testified, he could be impeached with a pending charge. We consider whether he made a substantial showing of a constitutional violation with respect to either claim.

¶ 55    We first conclude that the petition does not plead deficient performance, to the extent he claims counsel improperly advised him regarding evidence of his gang ties. Significantly, defendant acknowledges in his petition that, during trial, he observed that the State elicited testimony from Roundtree and Walton that defendant was in a gang. This admission negates his suggestion on appeal that he did not testify because counsel advised him that evidence of gang ties "would not be elicited if he did not testify." That is, defendant admits that he knew that evidence of his gang ties had already been introduced in the State's case, by the time he elected not to testify in his defense. Defendant also alleged in the successive petition that he told counsel that he wished to testify to contradict Roundtree and Walton's testify that he was in a gang, but counsel told him that "the jury would never believe that he was not in a gang." That is not sufficient to allege ineffective assistance of counsel. Even assuming that counsel told him that the jury would not believe him, this was merely counsel's opinion and does not give rise to an ineffective assistance of counsel claim. This allegation does not identify incorrect legal advice but merely alleges counsel predicted that the jury would not find defendant credible, which was a matter of opinion and trial strategy. See *Coleman*, 2011 IL App (1st) 091005, ¶ 31 (explaining there was no valid claim of ineffective assistance of counsel where "trial counsel simply gave his professional opinion * * * that taking the stand by the defendant was a 'bad idea.' That statement cannot form the basis of a

claim that the advice was not objectively reasonable when trial counsel's statement amounts to no more than his professional opinion * * *. [Citation.]").

¶ 56    We reach a different conclusion, however, to the extent defendant alleged he did not testify due to counsel's erroneous advice that he could be impeached with a pending charge. In this regard, keeping in mind the allegations are taken as true if not affirmatively refuted, defendant has set forth a substantial showing of ineffective assistance of counsel. *Domagala,* 2013 IL 113688, ¶ 35. That is, he has adequately pled that counsel's performance was deficient and that the deficient performance prejudiced him.

¶ 57    In this respect, we agree with defendant that *People v. Seaberg*, 262 Ill. App. 3d 79 (1994) is instructive. In that case, the defendant alleged in his postconviction petition that he wished to testify in his own behalf at the trial, but his trial counsel erroneously advised him that he would be impeached with a misdemeanor battery conviction. *Id.* at 83. The State acknowledged that the alleged advice was erroneous, because defendant "could not be impeached by prior misdemeanor battery convictions." *Id.* (citing *People v. Montgomery*, 47 Ill. 2d 510 (1971) (adopting rule that felony convictions may be used for impeachment)). In *Seaberg,* the court determined that the first-stage summary dismissal was error, as the defendant had "adequately stated the gist of the requisite claim" and there were "no facts in the record to contradict petitioner's claim that he would have testified but for his attorney's erroneous advice." *Id.* at 84.

¶ 58    In this appeal, the State urges that we should not rely on *Seaberg,* as that decision was an appeal from a first-stage summary dismissal. We acknowledge that the procedural posture of *Seaberg* is different, and that our review of a summary dismissal merely assesses whether the claim was frivolous or patently without merit. See *Hodges*, 234 Ill. 2d at 17. However, even on review

of a second-stage dismissal, we do not assess the credibility of defendant's factual assertions or the ultimate merits of his contentions. Rather, we assess "the legal sufficiency of the petition," taking the allegations as true unless affirmatively refuted by the record. *Domagala*, 2013 IL 113688, ¶ 35.

¶ 59    Under this standard, we conclude defendant sufficiently alleged a substantial showing of ineffective assistance of counsel, based on counsel's alleged advice that he could be impeached with his pending charge. First, defendant sufficiently alleged that counsel's erroneous advice constituted deficient performance under the *Strickland* standard. In this respect, we agree with defendant that the nature of the alleged erroneous advice (that his testimony would subject him to impeachment with the pending charge) resembles that alleged in *Seaberg*. Further, the State does not dispute that defendant could *not* have been impeached with the pending murder charge, as he had not been convicted of that offense. We find defendant has adequately pleaded that counsel's advice was "objectively unreasonable." *Domagala*, 2013 IL 113688, ¶ 36.  Regarding the second prong of the *Strickland* inquiry, we find that defendant sufficiently alleged prejudice, *i.e.*, a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id*. (quoting *Strickland*, 466 U.S. at 694). In his supplemental petition, defendant alleged that, as a result of counsel's erroneous advice, he "chose not to testify; and the testimony of Walt[on] and Roundtree went unrebutted." He further alleged that his testimony "could have affected the jury and changed the outcome of his trial."

¶ 60    We do not speculate as to whether a jury would have found defendant more or less credible than the State's witnesses. Nevertheless, defendant has sufficiently alleged a reasonable probability that the result would be different, but for counsel's alleged erroneous advice. He

alleged that he did not testify based on counsel's incorrect advice, and that had he testified, he would have contradicted Walton and Roundtree's testimony identifying him as the shooter. Especially since the State primarily relied on those witnesses' testimony at trial, defendant has alleged a reasonable probability of a different result. We conclude that, with respect to this particular allegation of trial counsel's ineffectiveness, defendant has made a substantial showing of a constitutional violation.

¶ 61    In summary, we conclude defendant is entitled to a third-stage evidentiary hearing on his actual innocence claim, to the extent it is premised on the affidavits of Kenerson and Williams. We also conclude that defendant's claim of ineffective assistance of counsel should advance to a third-stage evidentiary hearing, but only to the extent he alleges that he did not testify in reliance on counsel's erroneous advice that he could be impeached with a pending charge.

¶ 62    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for an evidentiary hearing under the Act consistent with this order.

¶ 63    Reversed and remanded.